THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
DISTRICT COURT
INDIANAPOLIS DIVISION

2013 MAY 21  PM 1: 04

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| OTIS B. GRANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CAUSE NO: |
| THE TRUSTEES OF INDIANA UNIVERSITY, | ) |
| INDIANA UNIVERSITY, | ) |
| INDIANA UNIVERSITY SOUTH BEND, | ) |
| MICHAEL A. MCROBBIE, PRESIDENT, | ) **1 : 1 3 -cv- 0 8 2 6 TWP -MJD** |
| INDIANA UNIVERSITY, | ) |
| UNA MAE RECK, CHANCELLOR, | ) |
| INDIANA UNIVERSITY SOUTH BEND,  and | ) |
| ALFRED J. GUILLAUME, JR., VICE | ) |
| CHANCELLOR FOR ACADEMIC AFFAIRS, | ) |
| INDIANA UNIVERSITY SOUTH BEND | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Otis B. Grant ("Plaintiff"), through his attorneys Ciobanu Law, P.C., brings this action against Defendants as follows:

### NATURE OF THE ACTION

1) The Plaintiff Otis B. Grant is an African American who was an award winning tenured faculty member at Indiana University South Bend for more than a decade until he was illegally fired (dismissed) by Defendants on December 31, 2011: (a) without ever being found guilty of misconduct by any lawful proceedings; (b) without a hearing; (c) without any discussion or evaluation of his work performance; (d) without being advised about how he violated Indiana University South Bend policy; (e) without having his case reviewed by the Indiana University South Bend Promotion, Tenure and Reappointment Committee; and (f) without using the

1

Indiana University South Bend Faculty Misconduct Committee ruling (which incidentally, ruled in his favor).

2) Although Plaintiff had never been found guilty of misconduct, Defendant Reck circumvented the Indiana University South Bend dismissal process and grievance process and submitted Plaintiff's termination directly to The Trustees of Indiana University, who approved it, thereby eliminating Plaintiff's internal grievance remedies and right to appeal.

3) During the course of Plaintiff's employment, the Defendants discriminated against Plaintiff, in the terms, conditions and privileges of his employment, in substantial part, in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e-5), and jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a).

4) Also during the course of Plaintiff's employment, the Defendants discriminated against Plaintiff, in the terms, conditions and privileges of his employment, in substantial part, in violation of the Indiana Civil Rights Act IC-29-1-1 et seq.; engaged in Tortious Interference, Breach of Contract, and Defamation.

## JURISDICTION

5) The Court has jurisdiction over this proceeding pursuant to 42 U.S.C. §2000e-5(f)(3) (Title VII) and 42 U.S.C. §1981 as amended by the Civil Rights Act of 1991. In addition, jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

6) The Court has supplemental jurisdiction over Plaintiff's claim under Indiana Civil Rights Law pursuant to 28 U.S.C.§ 1367 because these claims closely relate to the § 1981, Title VII claims, having arisen from a common nucleus of operative facts, such that all claims form part of the same case or controversy.

7) The Court also has supplemental jurisdiction over Plaintiff's claim of Breach of Contract, Defamation, Infliction of Emotional Distress, and violation of Indiana Codes of Conduct and

2

Disciplinary Measures IC-21-39-2-4 pursuant to 28 U.S.C. § 1367 because these claims closely relate to the § 1981, Title VII claims, having arisen from a common nucleus of operative facts, such that all claims form part of the same case or controversy.

8) Plaintiff has satisfied his obligation to exhaust his administrative remedies as required under 42 U.S.C. § 2000 *et seq* by timely filing a charge of discrimination with the United States Equal Opportunity Employment Commission ("EEOC"). The EEOC issued Plaintiff a Notice of Right to Sue which Plaintiff received on February 22, 2013. Plaintiff filed suit within ninety (90) days of receipt of said notice. Plaintiff has complied fully with the administrative prerequisites of Title VII.

9) Venue is proper within this District pursuant to on 28 U.S.C. § 1391 because Defendant Indiana University South Bend is an entity of Defendant Indiana University which does business in this District, Defendants The Trustees of Indiana University is the governing board and legal owner of Indiana University, Defendant Michael A. McRobbie is the President of Indiana University, and Defendants Una Mae Reck and Alfred J. Guillaume, Jr., were at all relevant times employees of Indiana University South Bend.

## PARTIES

10) Plaintiff Otis B. Grant is an African American male and was an Associate Professor of Law and Society (with tenure) at Indiana University South Bend ("Plaintiff").

11) Defendant Una Mae Reck is a white female and the Chancellor of Indiana University South Bend ("Defendant Reck").

12) Defendant Alfred J. Guillaume, Jr. identifies himself as a "Creole" and is the Vice Chancellor for Academic Affairs at Indiana University South Bend ("Defendant Guillaume").

13) Defendant Michael A. McRobbie is the President of Indiana University ("Defendant McRobbie").

14) Defendant The Trustees of Indiana University is the governing board and legal owner of Indiana University.

15) Indiana University is a public institution which operates several campuses throughout the state of Indiana.

16) Indiana University South Bend is an entity of Indiana University and operates in South Bend, Indiana.

17) At times relevant to this litigation, Defendants were Plaintiff's employer within the meaning of Title VII, and Indiana Civil Rights Law.

## **INTRODUCTION**

18) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

19) Because this Complaint is submitted for the limited purpose of establishing probable cause, Plaintiff has not included herein the details of every aspect of discrimination, disparate treatment, retaliation, breach of contract, tortious interference, defamation, and infliction of emotional distress. Statements attributable to individuals contained herein are related in substance and in part. Length of Complaint is due to issues of precedent regarding tenure at a public university.

20) Defendant Reck's actions stem from her re-interpretation of Plaintiff's alleged 1998 resume.

21) In her dismissal letter, Defendant Reck claimed that in the course of gathering records to respond to a 2008 open records request from South Bend Tribune reporter Margaret Fosmoe, Defendant Guillaume noticed several discrepancies within those records that "prompted him to obtain clarification from [Plaintiff]."

22) Even though Defendant Guillaume was not an Indiana University South Bend employee at the time Plaintiff was hired, he alleged that Plaintiff engaged in serious misconduct by "misleading" Indiana University South Bend via Plaintiff's alleged 1998 resume and cover letter.

23) Per Indiana University South Bend policy, the Indiana University South Bend Faculty Misconduct Committee has jurisdiction in matters alleging faculty misconduct. *See* **Art. XI § 5(A) Faculty Misconduct Policy Procedures.**

24) In November 2009 the Indiana University South Bend Faculty Misconduct Committee found Plaintiff innocent on all charges. Furthermore, then as now, Plaintiff has consistently denied those charges and will continue to do so. In addition, Plaintiff asserts that with all due respect to Defendant Reck, her rendition of the facts is false.

25) Upon information and belief, Plaintiff testified to the Indiana University South Bend Faculty Misconduct Committee that it was Defendant Guillaume who contacted South Bend Tribune reporter Margaret Fosmoe and thereby engaged in collusion with her to maliciously, falsely and recklessly portray Plaintiff in a defamatory false light.

26) Upon information and belief, Plaintiff claims that Defendant Guillaume engaged in this behavior as retaliation for Plaintiff naming him in a complaint with Indiana University *before* Defendant Guillaume sought Plaintiff's termination.

27) Defendant Guillaume persistently and intentionally carried out actions which did not have any legitimate non-discriminatory purpose and which, among other issues, constituted unlawful racial discrimination, retaliation, disparate treatment, breach of contract, tortious interference, defamation, and infliction of emotional distress.

28) Defendant Guillaume's discrimination and retaliatory misconduct was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's physical and emotional well-being and created an intimidating, hostile and offensive working environment.

5

29) The acts and misconduct by Defendant Guillaume recounted herein were conducted routinely and persistently without any correction or discipline from Defendant Reck. As a direct and proximate result of the discrimination, retaliation, disparate treatment, breach of contract, tortious interference, defamation, and infliction of emotional distress, Plaintiff suffered great embarrassment, humiliation, mental anguish and physical harm.

30) Furthermore, and upon information and belief, Plaintiff claims that no white professor at Indiana University South Bend ever received or suffered from comparable maltreatment.

## FACTS COMMON TO ALL CLAIMS

31) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

32) Plaintiff was a tenured faculty member and had been on the Indiana University South Bend campus for more than a decade.

33) Plaintiff is African American, a veteran, and is over the age of 50, who was exceeding Defendants' expectations.

34) Plaintiff was not terminated for legitimate, non-discriminatory reasons because Plaintiff had never been found guilty of misconduct. Defendant Reck has never disputed this claim. Rather, Defendant Reck claimed that Plaintiff, an African American male, complained too much about discrimination and retaliation and that she [Defendant Reck] did not have to follow law or Indiana University South Bend policy to terminate Plaintiff; that all she had to do was write a letter to fire Plaintiff even though he had never been found guilty of misconduct.

35) Plaintiff is informed and believes and based upon such information and belief, alleges that there was no dismissal procedure, Due Process, or just cause; that Defendant Reck simply fired Plaintiff by issuing him a "dismissal letter" even though Plaintiff was never found guilty of misconduct.

6

36) In the nearly **two hundred (200) year history of Indiana University**, only **one** (1) tenured faculty member had been fired and that was after he (a white male) was found guilty in a lawful proceeding, received full Due Process, had multiple chances to rehabilitate and he himself testified that he was set in his ways, and he was not going to change his behavior.

37) On February 10, 2012, Defendant Reck was advised by the *Indiana Department of Workforce Development* that Plaintiff was not discharged for just cause.

38) Being advised by the *Indiana Department of Workforce Development* that Plaintiff was not discharged for just cause did not stop Defendant Reck's discrimination and retaliation against Plaintiff.

39) In fact, days after being notified by the *Indiana Department of Workforce Development* that she did not have just cause to fire Plaintiff, Defendant Reck contacted various media outlets and advised them that Plaintiff had been fired.

40) At the time Defendant Reck falsely conveyed to the media that Plaintiff had been sanctioned, fired and had engaged in fraudulent behavior throughout his employment at Indiana University South Bend, Defendant Reck knew that Plaintiff had never been found guilty of misconduct or been sanctioned.

41) At the time Defendant Reck falsely conveyed to the media that Plaintiff had been sanctioned, fired and had engaged in fraudulent behavior throughout his employment at Indiana University South Bend, Defendant Reck knew that Plaintiff had constantly and consistently complained about discrimination and retaliation, and had been engaged in protected activities prior to, and at the time of, his unlawful termination.

42) Defendant Reck also conveyed to The Trustees of Indiana University that Plaintiff was fired "due to falsification of credentials."

7

43) At the time Defendant Reck conveyed to The Trustees of Indiana University that Plaintiff was fired "due to falsification of credentials," Defendant Reck was aware that Plaintiff had never been found guilty of misconduct and that she had circumvented the Indiana University South Bend dismissal process and grievance process by submitting Plaintiff's termination directly to The Trustees of Indiana University, who subsequently approved it, thereby eliminating Plaintiff's internal grievance remedies and right to appeal.

44) Furthermore, per Indiana University policy, the Chancellor of Indiana University South Bend does not have the authority *per se* to simply fire a tenured faculty member. The Chancellor can only give a recommendation for a tenured faculty member's termination and said recommendation must be acted on by the President of Indiana University and The Trustees of Indiana University. Moreover, said termination can come only after the tenured faculty member had a hearing and been found guilty of misconduct and dismissal proceedings were approved by the Indiana University South Bend Promotion, Tenure and Reappointment Committee.

45) At the time of this Complaint, Plaintiff has yet to receive any notification from Indiana University President McRobbie or The Trustees of Indiana University indicating that they concur with Defendant Reck's "recommendation" and that Plaintiff is in fact officially terminated from Indiana University South Bend.

46) It should be noted that Defendant Reck *never* used the terms "falsification of credentials" until she submitted Plaintiff's termination to The Trustees of Indiana University.

47) As with all of the misconduct complained of herein, there was no legitimate non-discriminatory reason for Defendant Reck's actions.

48) As a direct and proximate result of Defendant Reck's discrimination, retaliation, disparate treatment, breach of contract, tortious interference, defamation, and infliction of emotional distress, Plaintiff suffered great embarrassment, humiliation, mental anguish and physical harm.

## A. Plaintiff was never found guilty of misconduct

49) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

50) As mentioned earlier, per Indiana University South Bend policy, the Indiana University South Bend Faculty Misconduct Committee has jurisdiction in matters alleging faculty misconduct. *See* **Art. XI § 5(A) Faculty Misconduct Policy Procedures.**

51) In September 2009, Defendant Guillaume brought Plaintiff before the Indiana University South Bend Faculty Misconduct Committee claiming that Plaintiff misled the University with his alleged 1998 resume (curriculum vitae), even though neither Defendant Guillaume nor Defendant Reck were employees of Indiana University South Bend at the time of Plaintiff's hiring.

52) In November 2009, the Indiana University South Bend Faculty Misconduct Committee found in Plaintiff's favor on all issues, ruling that *"there is not sufficient basis to merit a hearing or any other proceeding in the case."* [emphasis added] (FMC 2009, p. 1)

53) The Indiana University South Bend Faculty Misconduct Committee also ruled that even if the allegations were true (which they are not), it *cannot be the basis for removal of [Plaintiff's] tenure and dismissal ("termination") from Indiana University.* [emphasis added] [FMC 2009, p. 2]

54) Per Indiana University South Bend policy, if Defendant Guillaume disagreed with the recommendation of the Indiana University South Bend Faculty Misconduct Committee he had **10 working days** in which to present his claims. *See* **Art. § 5(G)(6) of the Constitution of the Indiana University South Bend Academic Senate (2008).**

55) Despite the Indiana University South Bend Faculty Misconduct Committee ruling, Defendant Guillaume disregarded Indiana University South Bend policy and waited more than six (6)

9

months, whereupon he wrote a letter to Defendant Reck asking that she fire Plaintiff in open defiance and in disregard of the Indiana University South Bend Faculty Misconduct Committee ruling.

### B. Indiana University South Bend Faculty Misconduct Committee clears Plaintiff but Defendant Guillaume continues to make false statements

56) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

57) Upon information and belief, at all times relevant herein, Plaintiff attests that the reason Defendant Guillaume did not give the Indiana University South Bend Faculty Misconduct Committee a copy of his letter to Defendant Reck is because Defendant Guillaume made numerous ***FALSE STATEMENTS*** in the letter.

58) For example, in his letter to Defendant Reck requesting Plaintiff's dismissal, Defendant Guillaume made a false statement when he said the Indiana University South Bend Faculty Misconduct Committee declined to proceed because the "misrepresentations" happened before Plaintiff's appointment to the faculty.

59) In fact, as documented, the Indiana University South Bend Faculty Misconduct Committee did rule on the facts and ***NEVER*** used the term "misrepresentation." (citations in the original)

60) Defendant Guillaume purposely made this ***false statement*** in an effort to indicate that the Indiana University South Bend Faculty Misconduct Committee found in his favor or was even interested enough in his allegations to warrant a hearing. They were not.

61) In fact, the Indiana University South Bend Faculty Misconduct Committee investigated Defendant Guillaume's claims and ruled there was no need for a hearing and there should be no more procedures regarding this matter.

•

62) Moreover, the Indiana University South Bend Faculty Misconduct Committee did not refer to Defendant Guillaume's charges as "findings" but rather as "allegations" that subsequently, were not substantiated.

63) It should be noted, that per Indiana University South Bend policy, the Chancellor does not get a copy of the Indiana University South Bend Faculty Misconduct Committee report if the Indiana University South Bend Faculty Misconduct Committee does not recommend dismissal against the faculty member. *See* **Art. XI 5(G)(5) of the Constitution of the Indiana University South Bend Academic Senate (2008).**

64) The rationale is that if the Indiana University South Bend Faculty Misconduct Committee does not find any wrong doing, the charges are effectively dismissed.

65) Notwithstanding, *Defendant Guillaume's letter to Defendant Reck states the **same** allegations that were previously reviewed and ruled on by the Indiana University South Bend Faculty Misconduct Committee.*

66) The fact that Defendant Guillaume did not allow either Plaintiff or the Indiana University South Bend Faculty Misconduct Committee to review his letter to Defendant Reck is a violation of **Art. § 5(G)(6) of the Constitution of the Indiana University South Bend Academic Senate (2008).**

67) Plaintiff told the Indiana University South Bend Faculty Misconduct Committee that he believed Defendant Guillaume engaged in this behavior as retaliation for Plaintiff naming him in a complaint with Indiana University *before* Defendant Guillaume sought Plaintiff's termination. (citations in the original)

## GENERAL ALLEGATIONS

68) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

11

69) As a consequence of Defendant Guillaume's letter to Defendant Reck requesting Plaintiff's dismissal, Plaintiff received a letter from Defendant Reck stating that she wanted to hold a meeting in an effort to ascertain if these issues could be resolved short of Plaintiff's firing.

70) Defendant Reck knew that Plaintiff had complained of discrimination and retaliation in the past.

71) Because of Plaintiff's concern regarding Defendant Reck's actions, Plaintiff had requested that an Indiana University Official from Bloomington accompany Plaintiff to the meeting.

72) Plaintiff attended the meeting on September 1, 2010 accompanied by an Indiana University Associate Vice President.

73) Prior to the meeting, Defendant Reck assured Plaintiff in writing of an "hour long" meeting.

74) At the start of the meeting, Defendant Reck seemed annoyed, unaware of the facts, preoccupied, frustrated and angry.

75) During the meeting Plaintiff once again advised Defendant Reck that Defendant Guillaume is the only person who has had this particular interpretation of Plaintiff's alleged 1998 cover letter and resume (i.e., curriculum vitae).

76) At the meeting Plaintiff told Defendant Reck the same facts that he told the Indiana University South Bend Faculty Misconduct Committee and claimed as follows:

## A. Plaintiff has never "misled" Indiana University

77) In 1999, as part of the Indiana University South Bend hiring process, Plaintiff interviewed with the entire hiring committee and with each committee member individually. In addition, Plaintiff was required to give a research presentation, classroom teaching presentation, and a survey of public service. Samples of Plaintiff's research papers including portions of his Master's Thesis were also requested and delivered prior to his on-campus interview.

78) While on campus Plaintiff readily told the hiring committee and students about his experiences and his education background.

12

79) Plaintiff did so openly and honestly.

80) As documented, Plaintiff's Law degree was the condition of his employment.

81) In Plaintiff's "Letter of Hire" dated May 10, 1999, Dr. Kenneth Perrin, Chancellor of Indiana University South Bend and A. James Barnes, Dean of the School of Public and Environmental Affairs, Indiana University, state: *"An official transcript from the **University of Connecticut School of Law** will serve as verification of your degree status."*

82) On Plaintiff's own initiative, he utilized Indiana University South Bend's University Center for Excellence in Teaching (UCET), Academic Workshops, etc. to develop his skills and resume.

83) Plaintiff did not willfully mislead Indiana University; Plaintiff developed his resume openly and honestly.

84) Plaintiff openly talked about his work experience.

85) Plaintiff did not mislead the University especially given the fact that Indiana University did not rely on Plaintiff's M.A. degree.

86) As a veteran (i.e., Army Officer) and former police officer, Plaintiff regularly advised students who are veterans or active duty military personnel and those who seek a career in law enforcement.

87) Plaintiff readily tells them about his experiences and education background.

88) Plaintiff does so openly and honestly.

89) As the *only* African American male professor (faculty member) who was tenured at Indiana University South Bend, Plaintiff is often called upon to speak in public.

90) Plaintiff readily tells the public about his experiences and education background.

91) Plaintiff does so openly and honestly.

92) Defendant Reck acknowledged Plaintiff's experience with Indiana University governance, including his work with the American Association of University Professors (AAUP).

93) Plaintiff pointed out that he is one of the few African American male professors in higher education and he is committed to Indiana University and academic excellence.

94) Defendant Reck stated that African Americans are always "complaining" about discrimination and she was aware that Defendant Guillaume has chastised Plaintiff for filing Affirmative Action complaints.

95) Plaintiff reminded Defendant Reck that he is the only professor of "Law and Society" in the Indiana University system, and given the fact that all of his courses address society's response to issues that are often explicitly sexual, violent, and controversial, students are required to sign a warning, waiver and attendance policy, in which they acknowledge that the subject matter may be extremely graphic, and if they are offended by profanity and explicit sexual, violent, controversial subject matter, they may want to refrain from taking Plaintiff's courses.

96) Plaintiff told Defendant Reck that he has been a faculty member for more than a decade and that he is an award winning professor including being elected to *FACET* in his first year of eligibility. FACET is the *Faculty Colloquium on Excellence in Teaching* and was established as an Indiana University Presidential Initiative to promote and sustain teaching excellence and *recognizes Indiana University's most exemplary teaching faculty* with records of distinction as teachers. *See* **Indiana University South Bend Academic Handbook (2008) and Indiana University Academic Handbook (2011).**

97) Defendant Reck acknowledged that Plaintiff continues to receive some of the highest student evaluations on campus, and he publishes scholarly articles on a regular basis, and continues to serve the campus, community and academy.

98) Plaintiff advised Defendant Reck that the majority of faculty members earn tenure based on one (1) area of excellence. Notwithstanding, Plaintiff earned tenure based on two (2) areas of excellence (teaching and research).

99) Plaintiff also advised Defendant Reck that Mr. H. Daniel Cohen was the only faculty member to be fired in the history of Indiana University.

100) Plaintiff also advised Defendant Reck that the Cohen case is the standard for "serious personal misconduct" at Indiana University South Bend.

### B. Defendants refuse to follow the Cohen precedent of a similarly-situated white male

101) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

102) The Cohen case sets the standard for "serious personal misconduct" and "subsequent dismissal" at IU South Bend. *The Trustees of Indiana University vs. H. Daniel Cohen* 910 N.E.2D 251 (2009).

103) Daniel Cohen, a white male, was on the faculty at Indiana University South Bend; he is the only other faculty member in the history of Indiana University to be dismissed.

104) For the purpose of this Complaint, the relevant facts follow. Indiana University South Bend hired Mr. Cohen in 1987 to serve as a professor of physics with tenure and as Chancellor of the University's campus in South Bend, Indiana. A female employee of the University accused Cohen of forcibly kissing and groping her breast during a private meeting in Mr. Cohen's office in November of 1994. As a result of the sexual harassment allegations against him, Mr. Cohen agreed to resign his position as Chancellor of Indiana University South Bend and the University agreed that Mr. Cohen would continue to be a professor of physics.

105) The University and Mr. Cohen entered into an agreement in which Mr. Cohen would resign as Chancellor of Indiana University South Bend, receive a one-year fully funded sabbatical and return to the faculty as a "a Professor of Physics, with tenure with the rights and responsibilities attendant to that position." [p. 3] The University also provided Mr. Cohen with the use of a University vehicle, and a neutral reference if he decided to leave the University.

15

106) Furthermore, Mr. Cohen was obligated to keep confidential the existence and terms of the agreement, the University's and his obligation not to disparage each other, and his obligation to cooperate in any defense of claims or lawsuits in connection with his actions.

107) Mr. Cohen's agreement also stipulated that "any future proven act of sexual harassment or retaliation by Mr. Cohen that occurs from the date of this agreement will be considered serious personal misconduct and will result in immediate steps to dismiss him from the faculty." [p.3]

108) In December 1999 the Affirmation Action Officer (AAO) at Indiana University South Bend investigated claims in which students complained that Mr. Cohen discriminated against them based on their gender, religion, sexual harassment, and retaliation. The AAO determined that Chancellor Perrin should meet with the Dean of CLAS and the Chair of Physics to take whatever steps are necessary to remedy and monitor Mr. Cohen's relations with students to ensure proper respect for all students. [p.5]

109) In June 2000, ten students from Mr. Cohen's summer class wrote a letter to Chancellor Perrin, saying among other things that Mr. Cohen "consistently ridiculed his students for their lack of knowledge about the subjects he was supposed to be teaching," and that *"his demeanor discourages questions and intimidates his students."* Id. at 979-981

110) On January 3, 2001 Chancellor Perrin wrote a letter to Mr. Cohen addressing his conduct asking him to refrain from such behavior.

111) On January 13, 2001 Mr. Cohen sent a letter to Chancellor Perrin disagreeing with Chancellor Perrin's management style. [p.7]

112) On February 8, 2001 the South Bend Tribune published a letter from Mr. Cohen criticizing Chancellor Perrin.

113) On March 8, 2001 the South Bend Tribune published a letter from Mr. Cohen criticizing the physical attributes of women who complain of sexual harassment. [p.8]

114) Also on March 8, 2001, Mr. Cohen was walking to his office when he noticed a former student who had filed a sexual harassment complaint against him sitting in a classroom taking a makeup exam. According to court records, Mr. Cohen stopped and made eye contact with her for "five seconds." Id. at 859 (citations in the original) [p.5] According to the AAO that conducted the investigation, as a result of Mr. Cohen's actions the female student became "visibly very distraught" and "clearly and visibly shaken" by the encounter.

115) Mr. Cohen in turn filed an affirmative action (AA) complaint against the student claiming she is retaliating against him for the grade she had received in his course and for the article that he had written in the Tribune.

116) Chancellor Perrin suspended Mr. Cohen with pay pending the outcome of an AA investigation for retaliation against the student.

117) The AAO once again conducted another investigation in regards to these new alleged acts. On April 17, 2001 after interviewing twelve witnesses including students and professors, the AAO determined that the student's account was credible.

118) It should be noted that even though Mr. Cohen was found guilty in the first instances, the AAO found that in the original complaint the evidence was *"insufficient to sanction him."* [emphasis added] [p.10]

119) At the request of Chancellor Perrin, the Indiana University South Bend Promotion, Tenure, and Reappointment Committee met and reviewed the AAO's report from April 17, 2001, and Mr. Cohen's written response to the AAO's report, and recommended "that proceeding of dismissal of Mr. Cohen be initiated." Id. at 948 [p.11]

120) In June 2001 the Indiana University South Bend Faculty Board of Review conducted a hearing "with regard to dismissal and revocation of tenure of Prof. Cohen." Id. at1076 (citations in the original) [p.11] The hearing lasted approximately twenty hours, during which the Indiana

University South Bend Faculty Board of Review reviewed documents submitted by Mr. Cohen and the University and heard testimony from nine witnesses, including Mr. Cohen, Chancellor Perrin, an AAO, a police officer, and several former students, including the student that Mr. Cohen allegedly retaliated against.

121) The Indiana University South Bend Faculty Board of Review determined that Mr. Cohen intimidated students, referred to students as stupid, repeatedly and inappropriately yelled at students, made offensive remarks regarding a student's race, and made negative comments about students' religious beliefs. The Indiana University South Bend Faculty Board of Review also said that Mr. Cohen acted in a hostile and intimidating manner. The Indiana University South Bend Faculty Board of Review concluded that Cohen repeatedly demonstrated disrespect toward students, created a hostile and intimidating learning environment for students, "repeatedly and knowingly" violated the Indiana University Code of Academic Ethics, and that his behavior constituted serious personal misconduct.

122) Indiana University fired Mr. Cohen, noting that he had received numerous and sincere efforts by many parties to conform, but by his claim that *"It is unlikely that I will change."* (citations in the original) He demonstrated that he would continue to engage in the same behavior, and as such any sanction short of dismissal would not be effective. (citations in the original)

123) As found in *Cohen*, and thus dictated by case law and Indiana University South Bend policy, at Indiana University South Bend, a faculty member must be given a chance to rehabilitate.

124) Also, as found in *Cohen*, and stipulated in Indiana University South Bend policy, the faculty member must be found guilty by lawful proceedings and the faculty member must have their case submitted to the Indiana University South Bend Promotion, Tenure and Reappointment Committee for a determination as to whether dismissal proceedings should be instituted. *See*

*also* **Art. IX § 4(D) of the Constitution of the Indiana University South Bend Academic Senate (2008)].**

125)   Defendant Reck is familiar with *Cohen*. The reason she did not cite *Cohen* is because as illustrated in the court record, Cohen received Due Process and was found guilty of misconduct, whereas the Plaintiff was never found guilty of misconduct and did not receive Due Process.

126)   Instead of providing case law and precedents, Defendant Reck offered newspaper articles which were not relevant to Plaintiff's case.

127)   In the cases provided by Defendant Reck the faculty members were found guilty by their respective disciplinary committees (peer-review).

128)   It is noteworthy, that in the examples provided by Defendant Reck none of the faculty members were dismissed from the faculty, nor were any of the workers terminated.

129)   Hence, at even the most elementary level, Plaintiff's case is distinguished from these cases in that Plaintiff was not found guilty of any wrong doing.

130)   Per Indiana University South Bend policy, the Indiana University South Bend Faculty Misconduct Committee has jurisdiction in matters alleging faculty misconduct. *See* **Art. XI § 5(A) Faculty Misconduct Policy Procedures.**

131)   On all issues the Indiana University South Bend Faculty Misconduct Committee found in Plaintiff's favor, ruling that *"there is not sufficient basis to merit a hearing or any other proceeding in the case"* [emphasis added] (FMC 2009, p. 1).

132)   The Indiana University South Bend Faculty Misconduct Committee also ruled that even if the allegations were true (which they are not), it *cannot be the basis for removal of Plaintiff's tenure and my dismissal from Indiana University.* [emphasis added] [FMC 2009, p. 2].

133)   In sum, in the cases provided by Defendant Reck the faculty members were found guilty by their respective committees (i.e., peer-review process) and were not dismissed from the faculty.

Whereas, Plaintiff was not found guilty of any wrong doing but was dismissed from the faculty.

134)   As with all of the misconduct complained of herein, there was no legitimate non-discriminatory reason for Defendant Reck's actions.

## C.  Defendant Reck claims that she does not have to follow Due Process, or formal procedures, or any other lawful process; that all she has to do is write a letter to "fire" Plaintiff

135)   Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

136)   Defendant Reck claimed that she does not have to follow Due Process and that she can simply "write a letter" and "fire" Plaintiff even though he is a tenured faculty member.

137)   Plaintiff pointed out that Indiana University South Bend policy does not allow for the Chancellor to "administratively" fire a faculty member.

138)   Plaintiff advised Defendant Reck that she is required by Indiana University South Bend policy to have Plaintiff's case reviewed by the Indiana University South Bend Promotion, Tenure and Reappointment Committee before she seeks his dismissal. *See* **Art. IX, § 4(D) of the Constitution of the Indiana University South Bend Academic Senate.**

139)   Plaintiff reminded Defendant Reck that per Indiana University South Bend policy, any faculty member that is to be dismissed for misconduct must appear before the Indiana University South Bend Faculty Misconduct Committee. *See* **Art. XI § 5 Faculty Misconduct Policy and Procedures of the Constitution of the Indiana University South Bend Academic Senate.**

140)   Plaintiff pointed out that because his case has already been adjudicated by the Indiana University South Bend Faculty Misconduct Committee, and found to have no merits, he cannot be put through the process again. **Moreover, the Indiana University South Bend Faculty Misconduct Committee was specific in stating that there should be no more proceedings in this matter.**

141) Also during the meeting, Plaintiff once again advised Defendant Reck about the Indiana University media policy, which she refused to acknowledge.

142) Whereas it is upsetting that Defendant Reck would *not* discuss the issues, *refused* to evaluate Plaintiff's work performance, was *dismissive* of Plaintiff's concerns and the policies and procedures that she must follow, and abruptly ended the meeting after only fifteen (15) minutes.

143) What is most disturbing is that for such an important matter as firing a tenured faculty member Defendant Reck would cut the meeting short. The magnitude of these proceedings cannot be ignored.

144) It should be noted, however, that a year later in September 2011, when Defendant Reck finally acknowledged the validity of the Indiana University media policy that Plaintiff had initially advised her on, and Plaintiff subsequently demanded that Defendant Reck enforce same, Defendant Reck *immediately* issued a letter for Plaintiff's termination even though the issue had been ongoing for nearly **four (4) years.**

145) As mentioned earlier, in the nearly **two hundred (200) year history of Indiana University**, only **_one_** (1) tenured faculty member has been fired from the faculty and that was after he (a white male) received full Due Process, had multiple chances to rehabilitate and he himself testified that he was set in his ways, and he was not going to change his behavior.

146) In contrast to the similarly-situated white male, in regards to Plaintiff there was no dismissal procedure, no Due Process, or "just cause." Defendant Reck simply fired Plaintiff by issuing him a "dismissal letter."

147) Accordingly, upon information and belief, at all times relevant herein, Plaintiff attests that Defendant had no intention of discussing the issues or evaluating Plaintiff's work performance.

148) Rather, the sole purpose of the meeting was to attempt to intimidate and humiliate Plaintiff in a coercive effort to force Plaintiff to resign from the Indiana University South Bend faculty.

149)   In violation of Title VII, and Equal Rights under law, Defendant Reck was intentionally trying to coerce Plaintiff to resign from the Indiana University South Bend faculty: (a) without ever being found guilty of professional or personal misconduct by any lawful proceedings; (b) without a hearing; (c) without any discussion or evaluation of his work performance; (d) without being advised about how he violated Indiana University South Bend policy; (e) without having his case reviewed by the Indiana University South Bend Promotion, Tenure and Reappointment Committee; and (f) without using the Indiana University South Bend Faculty Misconduct Committee ruling (which incidentally, ruled in his favor).

**D.  Defendant hired a private investigator to conduct an illegal "retroactive hiring process"**

150)   Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

151)   A month after that meeting in 2010, Defendant Reck hired Klink, Inc., a private investigator to question Plaintiff's previous employers, investigate Plaintiff's "background" and conduct a "retroactive hiring process." Hiring Klink to conduct an unauthorized nonconsensual background check on Plaintiff is a violation of Indiana University policy. *See* **[Indiana University South Bend Recruitment and Search Guide (2009); Indiana University Search & Screen Procedures (2011); Academic & Search Guide, Office of the Vice Provost for Faculty and Academic Affairs (2011)].**

152)   Klink is not a disinterested third party; rather, Klink is a private contractor, paid for by Defendant Reck, with the mission (sole purpose) to promote Defendant Reck's false and damaging statements and her outrageous allegations.

153)   In violation of Indiana University policy, and without Plaintiff's permission or consent, Klink went back *more than thirty (30) years* to speak to people regarding Plaintiff's character and to also convey disparaging remarks, which is a clear violation of Indiana University policy

[**Indiana University South Bend Recruitment and Search Guide (2009); Indiana University Search & Screen Procedures (2011); Academic & Search Guide, Office of the Vice Provost for Faculty and Academic Affairs (2011)**].

154) Throughout Klink's Report there are numerous instances in which Klink engages in misleading, contradictory and false statements, in addition to providing information that cannot be substantiated or verified.

155) Klink provides information which *contradicts* their *own* findings.

156) In her dismissal letter Defendant Reck attempts to give the impression that a "retroactive hiring process" by Klink is a routine occurrence at Indiana University South Bend. Upon information and belief, and at all times herein, Plaintiff can attest that he has been at Indiana University South Bend for more than a decade and can attest that it is not.

157) The malicious and unfounded Klink investigation was part of Defendant Reck's continued harassment, discrimination and retaliation against Plaintiff and constitutes disparate treatment.

158) Yet, even with such a thorough background check, all Klink could do was merely summarize Defendant Reck's allegations. Said allegations were the same in which the Indiana University South Bend Senate Faculty Misconduct Committee investigated and cleared Plaintiff of.

159) Defendant Reck never presented the Klink Report to the Indiana University South Bend Faculty Misconduct Committee. Defendant Reck's refusal to present the Klink Report to the Indiana University South Bend Senate Faculty Misconduct Committee is a violation of **Art. XII § 2 of the Constitution of the Indiana University South Bend Academic Senate (2008).**

160) Per Indiana University South Bend policy, only information presented to the Indiana University South Bend Faculty Misconduct Committee can be used for a sanction or dismissal. (citations in the original)

161) As such, Defendant Reck's use of information from the Klink Report is in violation of **Art. XII § 2 of the Constitution of the Indiana University South Bend Academic Senate (2008).**

162) As with all of the misconduct complained of herein, there was no legitimate non-discriminatory reason for Defendant Reck's actions.

163) As a direct and proximate result of the discrimination, retaliation, disparate treatment, breach of contract, tortious interference, defamation, and infliction of emotional distress, regarding the Klink Report, Plaintiff suffered great embarrassment, humiliation, mental anguish and physical harm.

164) Furthermore, and upon information and belief, Plaintiff claims that no white professor at Indiana University South Bend ever received or suffered from comparable maltreatment.

### E. Defendant Reck lied when she said Plaintiff changed his story

165) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

166) Plaintiff denies Defendant Reck's assertion that Plaintiff changed his story.

167) Defendant Reck knew or should have known that in 2008 Defendant Guillaume contacted the Hartford Superior Court (without Plaintiff's permission and knowledge) and confirmed Plaintiff clerked for the Hartford Superior Court. (citations in the original)

168) Defendant Reck knew or should have known that Defendant Guillaume's own evidence dated **December 5, 2008** stated: ***"Our information is that he [Grant] clerked in Connecticut from March 1997 to March 1998."*** (citations in the original) This information is consistent with Plaintiff's curriculum vitae and Indiana University South Bend application. However, Klink's findings clearly showed that Defendant Reck either intentionally withheld this information from Klink or Klink intentionally willfully disregarded it. In Indiana, willfully disregarding information is considered willful ignorance.

169) Defendant Reck carefully words her dismissal document, using words such as "instead," "admitted," and "despite" to give the impression that Plaintiff contradicted himself.

170) For instance, Defendant Reck avoids mentioning that Plaintiff clerked for both Judge Wright and Judge Rittenband at the Hartford Superior Court.

171) Defendant Reck knew or should have known, and as documented in Plaintiff's Grievance that in 2008 when Plaintiff was asked by Defendant Guillaume for contact information regarding Judge "Richard" M. Wright, Plaintiff clarified the name as Judge Richard M. "Rittenband" with contact information thereto; also stating that "obviously the names were transposed."

172) Defendant Reck is also aware that in December 2008 Plaintiff advised and gave Defendant Guillaume permission to speak to both Judge Rittenband and Judge Wright. (citations in the original)

173) Judge Wright is now deceased.

174) Moreover, per Defendant Reck's own evidence it is documented that Plaintiff clerked at the Hartford Superior Court.

175) By law, it is neither misleading nor fraud to unintentionally transpose names on a document.

### F. Defendant Guillaume and Defendant Reck engaged in Willful Ignorance

176) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

177) As noted above, in Indiana, willfully disregarding information is considered Willful Ignorance.

178) Another example is, by his own evidence, Defendant Guillaume acknowledged that Plaintiff did not attend the Gestalt Centre in London, stating *"We asked Professor Grant if he could have been mistaken and that the institute was actually named the "Gestalt Centre" but he*

*emphatically indicated that he received a Master's degree in psychology from "Gestalt Institute in Liverpool" and not the "Gestalt Centre in London"* (citations in the original)

179)    By his own admission, Defendant Guillaume knew that the Gestalt Centre in London is not the same as the Gestalt Institute in Liverpool.

180)    Defendant Guillaume was aware that the Gestalt Centre in London is and was at all times a *separate entity* that has in no way been associated with the Gestalt Institute in Liverpool.

181)    Defendant Guillaume knew that Plaintiff had never claimed to have attended the Gestalt Centre in London nor had Plaintiff held himself out as having attended the Gestalt Centre in London. (citations in the original)

182)    Yet, having said knowledge, Defendant Guillaume contacted the Gestalt Centre in London and told them that Plaintiff had claimed to have attended their institution. (citations in the original)

183)    Defendant Guillaume does not have any evidence that anyone thought that Plaintiff held himself out as having attended the Gestalt Center in London.

184)    When this issue was brought to Defendant Reck's attention she willfully disregarded the information.

185)    Defendant Guillaume does not have any evidence that anyone thought that Plaintiff held himself out as having graduated from the Gestalt Centre in London.

186)    Defendant Guillaume is the only person who considers Plaintiff's M.A. degree to be an issue.

187)    Defendant Guillaume was not an Indiana University South Bend employee at the time of Plaintiff's appointment and he used his position as the Vice Chancellor for Academic Affairs to intentionally misrepresent Plaintiff's cover letter and curriculum vitae in an effort to dismiss Plaintiff from the faculty.

188) Plaintiff believes Defendant Guillaume engaged in this behavior as retaliation because Plaintiff named him in a complaint before he sought Plaintiff's dismissal.

189) An example of when Defendant Guillaume's own evidence contradicts his charge is when Defendant Guillaume claimed is his charging statement that "Plaintiff was not admitted to any graduate degree program at Columbia University" and yet in that same document Defendant Guillaume then went on to say that Plaintiff was admitted to a graduate degree program at Columbia University. (citations in the original)

190) Defendant Guillaume also claimed that Teachers College, Columbia University was not a part of Columbia University. (citations in the original)

191) Another example of when Defendant Guillaume's own evidence contradicts his charge is when Defendant Guillaume asserted that Plaintiff claimed that he received fellowships directly from institutions. Per Defendant Guillaume's own evidence, he knew Plaintiff never claimed to have received a fellowship directly from any institution. Yet after having such knowledge, Defendant Guillaume contacted Teachers College, Columbia University and the University of Connecticut School of Law and told them that Plaintiff claimed to have received a fellowship from their respective institutions. (citations in the original)

192) In addition, Defendant contacted the Gestalt Centre in London and Columbia University Graduate School of Arts and Sciences, *schools Defendant Guillaume knew Plaintiff never claimed to have attended,* and told them that Plaintiff claimed to have received a fellowship from their respective institutions. Plaintiff stopped listing his financial aid awards on his curriculum vitae in 2000. Yet Defendant Guillaume falsely claimed that Plaintiff listed his financial aid on his curriculum vitae up to the time he was terminated.

193) When this issue was brought to Defendant Reck's attention she willfully disregarded the information.

194) Interestingly enough, Klink did not have a problem with the fellowships, yet Defendant Reck listed the fellowships in her termination letter to Plaintiff.

195) These are but some examples of the retaliation, discrimination, defamation, breach of contract, tortious interference, defamation, and infliction of emotional distress that Plaintiff faced at the hands of Defendant Guillaume and Defendant Reck.

### G. The claim that Defendant Guillaume cannot engage in discrimination against Plaintiff because Defendant Guillaume is Black is not supported by law or by Indiana University policy

196) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

197) The claim that Defendant Guillaume cannot engage in discrimination against Plaintiff because Defendant Guillaume is "Creole" is not supported by law or Indiana University policy.

198) The EEOC and the Courts have recognized colorism as a cause of action and have held that people of color can discriminate against other people of color even if they are of the same race, ethnic group or national origin. Plaintiff duly noted colorism in his EEOC complaint.

199) When Plaintiff was initially hired at Indiana University South Bend he was appointed to the faculty of the School of Public and Environmental Affairs (SPEA). As Plaintiff had documented, when he first arrived, the SPEA culture at Indiana University South Bend did not embrace diversity. In fact, on numerous occasions students would call Plaintiff "nigger," "spook," "spade," etc. The treatment of Plaintiff's female students by their peers was equally open and hostile.

200) Plaintiff constantly and consistently documented his concerns about SPEA. Plaintiff also had numerous conversations with Defendant Guillaume regarding his treatment in SPEA and the SPEA culture. Defendant Guillaume refused to intercede. In fact, on one occasion when one of Plaintiff's SPEA students, who was a member of the American Nazi Party, told him that

Plaintiff was an "arrogant uppity nigger," Defendant Guillaume advised Plaintiff that he must be more accommodating to such students because being prejudiced is what "Indiana" people are known for.

201) Partly as a response to such issues, Plaintiff built a stream of pedagogical research focusing on dealing with prejudiced, hostile students. As a result of attending workshops and working with Indiana University South Bend's University Center for Excellence in Teaching (UCET), Plaintiff regularly had high evaluations in SPEA. In addition to Plaintiff's teaching awards, Plaintiff was also elected Chair of the Education Problems Division at the Society for the Study of Social Problems.

202) Defendant Guillaume had always questioned Plaintiff's accomplishments and abilities. He once directed the Chief of the Indiana University South Bend Police Department to accompany the SPEA Dean to Plaintiff's class to monitor Plaintiff's students filling out course evaluations.

203) Yet, by his own admission, Defendant Guillaume considered the culture in SPEA to be so corrosive that he dismantled SPEA and put the faculty into other programs on campus. Indiana University South Bend the only Indiana University campus that does not have SPEA.

204) Notwithstanding, Defendant Guillaume put Plaintiff on the Indiana University South Bend Search and Screen Committee to hire the Director of the Criminal Justice program that was formerly in SPEA.

205) Plaintiff was awarded his first Indiana University Trustees' Teaching Award and elected to FACET while a faculty member of SPEA.

206) Plaintiff was also awarded tenure based on teaching and research excellence based on the work he did in SPEA.

207) Prior to Plaintiff receiving tenure, Defendant Guillaume told Plaintiff that he did not believe Plaintiff should receive tenure, and that he would not support Plaintiff's bid for tenure. (citations in the original)

208) Defendant Guillaume stated that Plaintiff should not get tenure because he was African American, not African, and Africans are considered smarter than African Americans and the citizens of Indiana would accept an African professor but not an African American professor.

209) Plaintiff was the only African American faculty member tenured under Defendant Guillaume's nearly fourteen (14) year administration.

210) Defendant Guillaume's letter supporting Plaintiff's tenure was proffered only at the intervention of Indiana University Bloomington and upon their direction thereof. As such, Defendant Guillaume's recommendation letter for tenure is not evidence of his support for Plaintiff.

211) Defendant Guillaume placed Plaintiff in the Indiana University South Bend Department of Sociology and Anthropology without Plaintiff's consent. Plaintiff is not a sociologist or an anthropologist. Plaintiff discovered that he was appointed to the Sociology faculty only four days before The Trustees of Indiana University approved it. Plaintiff did not have time to inquire as to the reason that he was placed in the Department of Sociology and Anthropology. Placing Plaintiff in said department constituted a radical change in working conditions. At the time of his termination, Plaintiff was the only Indiana University faculty member with a law degree that was on the sociology faculty.

212) During Plaintiff's employment at Indiana University South Bend, Plaintiff had tried reasoning with Defendant Guillaume, but to no avail. Each year Plaintiff had to visit Indiana University Bloomington to complain about Defendant Guillaume's treatment of him. (citations in the original)

213)   Plaintiff had noticed over the years that Defendant Guillaume would hold himself out as being Plaintiff's friend or mentor. Given Plaintiff's reputation and standing in the community and in the academy, on several occasions Plaintiff politely advised Defendant Guillaume to refrain from portraying to the public that he and Plaintiff are close friends or are in a mentoring relationship. (citations in the original)

### H. Defendant Reck lied when she claimed that Plaintiff never complained about Defendant Guillaume or Discrimination

214)   Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

215)   Defendant Reck's assertion that Plaintiff did not complain about Defendant Guillaume is false.

216)   As documented and attested to in Plaintiff's Grievance, Defendant Reck is aware of past issues Plaintiff has had with Defendant Guillaume and regarding this specific matter was aware in 2008 Plaintiff's concerns with Defendant Guillaume's behavior, ***including Defendant Guillaume's continued documented false statements.*** (citations in the original)

217)   Another example is that although Plaintiff's curriculum vitae was updated years prior and reflected faculty development, in his letter to Defendant Reck, dated May 10, 2010, Defendant Guillaume ***continued*** to falsely state that Plaintiff continued to misrepresent his credentials **"even today."**

218)   Here again Plaintiff complained to Defendant Reck about Defendant Guillaume in regards to his making false statements, claiming Plaintiff continues to misrepresent his credentials.

219)   In 2012, four (4) years since this matter began, Defendant Reck *confirmed* that the information had been updated years prior in 1999, 2000 and 2004, and by her own admission, *confirmed* that Defendant Guillaume's statements were *false*.

220)   Subsequently, Defendant Reck's statements attest to the truthfulness and validity of Plaintiff's statements throughout this ordeal.

221)   However, as evidenced and demonstrated in this Complaint, when Defendant Reck herself acknowledged Defendant Guillaume's false statements, she refused to address or acknowledge Plaintiff's concerns regarding Defendant Guillaume's actions.

222)   It should also be noted that Defendant Guillaume and now Defendant Reck are the only persons who have had this particular interpretation of Plaintiff's curriculum vitae.

**I. Defendant Reck demands that Plaintiff verify references of people who are now deceased**

223)   Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

224)   Defendant Reck demanded that Plaintiff verify the "state of mind" of those who submitted alleged reference letters on Plaintiff's behalf in 1999 and who are now deceased.

225)   Defendant Reck knows that in 2009 Defendant Guillaume had *falsely* stated to the Indiana University South Bend Faculty Misconduct Committee that in 1998 Plaintiff had attached reference letters to his resume. Upon investigation, when Defendant Guillaume's own evidence showed that Plaintiff did *not* send the reference letters or ever had possession thereof, Defendant Reck forwarded the alleged reference letters to Klink in an effort to *falsely* indicate that Plaintiff had originally sent the alleged letters directly to Indiana University South Bend almost thirteen (13) years ago. (citations in the original)

226)   Because the alleged reference letters were written almost thirteen (13) years ago, it is foreseeable and commonsensical that the parties would be deceased, incapacitated or unable to be contacted. This is a simple issue of time limitations.

227)   For example, Dr. Curtis Goar died in 2002 and Judge Wright died in 2010. Notwithstanding, in 2008, Plaintiff had given Defendant Guillaume consent to contact Judge Wright and there is

no evidence to indicate that Defendant Guillaume did not in fact contact Judge Wright or any other alleged reference.

228) Per Indiana University policy, reference letters are not required. **[Indiana University South Bend Recruitment and Search Guide (2009); Indiana University Search & Screen Procedures (2011); Academic Recruitment & Search Guide, Indiana University Office of the Vice Provost for Faculty and Academic Affairs (2011)].**

229) Per Indiana University South Bend and Indiana University policy, *"Committees are not required to check candidates' references or to request letters of reference"* **[Indiana University South Bend Recruitment and Search Guide (2009); Indiana University Search & Screen Procedures (2011); Academic Recruitment & Search Guide, Indiana University Office of the Vice Provost for Faculty and Academic Affairs (2011)].**

230) In addition, going back more than thirteen years to inquire about references is a violation of Indiana University policy. (citations in the original)

231) Furthermore, Defendant Guillaume initially claimed that the alleged references letters did not have contact information written thereon. When it was made clear that Defendant Guillaume lied and the contact information was clearly visible on each and every one of the alleged reference letters, Defendant Reck willfully ignored the issue. (citations in the original)

232) This is especially glaring because it was irrefutable that Plaintiff worked as a clerk at the Hartford Superior Court.

233) As with all of the misconduct complained of herein, there was no legitimate non-discriminatory reason for Defendant Reck's actions.

234) As a direct and proximate result of the discrimination, retaliation and disparate treatment, breach of contract, tortious interference, defamation, and infliction of emotional distress, regarding references, Plaintiff suffered great embarrassment, humiliation, mental anguish and

physical harm.

235) Upon information and belief, Plaintiff claims that no white professor at Indiana University South Bend ever received or suffered from comparable maltreatment.

### J. Defendants use the media to further their wrongful and discriminatory behavior

236) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

237) Defendants have constantly used the media in a pattern of wrongful and discriminatory behavior against Plaintiff.

238) For example, in an article published in the South Bend Tribune newspaper (that has since gone viral), Defendants asserted that two students in Plaintiff's course were allowed to withdraw after being "expelled" by Plaintiff.

239) However, in reality, and as documented, Plaintiff advised the students of their rights and worked with the Indiana University South Bend Office of Judicial Affairs during the entire matter.

240) Defendant Reck had written documentation that the students withdrew in lieu of being charged with misconduct *before* the articles were published.

241) Defendant Reck was also aware that contrary to what was published in the South Bend Tribune newspaper, the two students withdrew from the course to avoid facing disciplinary charges for their classroom conduct and one student withdrew due to moving out of state. In addition, the Indiana University South Bend Senate Academic Affairs Committee upheld Plaintiff's grade and denied the student's appeal.

242) The withdrawal procedures at Indiana University South Bend are transparent, codified, well-known and acknowledged. Given the policies and the withdrawal procedures, it is ludicrous to

suggest that Plaintiff "expelled" students from a course and Defendant Reck's portrayal of such is an indication of maliciousness and bad faith.

243) Defendant Reck was aware of the withdrawal procedures of Indiana University South Bend **[Grading Code, Withdrawal, Art. IV, The Academic Appointee and the Student on the Indiana University South Bend Campus, Indiana University South Bend Academic Handbook (2008)]** which states: *"A grade of W (Withdrawal) is given automatically on the date of withdrawal to the undergraduate who withdraws during the first four weeks of a regular semester or during the first two weeks of a summer session. **_Thereafter, it is given only when the student withdraws with the approval of the divisional Dean/Director._**"* [emphasis added]

244) In addition to violating numerous Indiana University South Bend policies, Defendant Reck was aware that conveying false statements to the media including stating to the media that a faculty member is sanctioned when they have not been sanctioned is in violation of the **Indiana University Code of Academic Ethics** and **Art. XII § 2 of the Constitution of the Indiana University South Bend Academic Senate (2008).** Again, Defendant Reck knows Plaintiff was not sanctioned and Defendant Guillaume violated Indiana University South Bend policy when he falsely stated to the media that Plaintiff was.

245) Another example is at the time that Defendant Reck conveyed Plaintiff's termination to the media, Defendant Reck knew that she did not have just cause to fire Plaintiff. Defendant Reck also knew that Plaintiff had not received any Due Process prior to his termination. That, in fact, it was only her dismissal letter *per se*, that caused Plaintiff to be terminated from Indiana University South Bend.

246) As with all of the misconduct complained of herein, there was no legitimate non-discriminatory reason for Defendant Reck's actions.

247) As a direct and proximate result of Defendant Reck's discrimination, retaliation, disparate treatment, breach of contract, tortious interference, defamation, and infliction of emotional distress, Plaintiff suffered great embarrassment, humiliation, mental anguish and physical harm.

248) Upon information and belief, Plaintiff claims that no white professor at Indiana University South Bend ever received or suffered from comparable maltreatment.

### K. Defendant Reck fired Plaintiff without Due Process, without formal procedures or any other lawful process, and without Plaintiff being found guilty of misconduct

249) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

250) Defendant Reck acted on her threat that she does not have to follow Due Process and that she can simply "write a letter" and "fire" Plaintiff.

251) Plaintiff, a tenured faculty member, was fired (dismissed) by Defendant Reck on December 31, 2011: (a) without ever being found guilty of professional or personal misconduct by any lawful proceedings; (b) without a hearing; (c) without any discussion or evaluation of his work performance; (d) without being advised about how he violated Indiana University South Bend policy; (e) without having his case reviewed by the Indiana University South Bend Promotion, Tenure and Reappointment Committee; and (f) without using the Indiana University South Bend Faculty Misconduct Committee ruling (which incidentally, ruled in his favor).

252) Defendant Reck knew that Plaintiff had complained of discrimination and retaliation in the past. In furtherance of her continuing pattern of wrongful and discriminatory behavior, Defendant Reck: (a) professed, promoted and articulated information that is clearly inaccurate and/or false; (b) used and misused materials from Plaintiff's pre-tenure period (i.e., probationary period); (c) used "faculty development" as a cause of action for misconduct; and (d) refused to adhere to Indiana University policy which stipulates Plaintiff should have a year before dismissal takes effect.

## L. Defendant Reck illegally locks Plaintiff out of his office

253) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

254) An example of the damage that occurred because of Defendant Reck's violation of the Indiana University policy which stipulates Plaintiff should have a year before dismissal takes effect, is when Plaintiff returned to the Indiana University South Bend campus in January 2012 after the semester break, he discovered that Defendant Reck had caused the locks on his office door to be changed so that Plaintiff could not get access to his office.

255) Plaintiff noticed some of his personal items had been discarded in trash bins that were located in the public hallway of the building. Needless to say, it was humiliating for Plaintiff to dig in the trash, in full view of the public, in order to retrieve his personal belongings.

256) Defendant Reck also confiscated Plaintiff's office computer and as such, Plaintiff was impeded in his Grievance actions, which is protected activity under Indiana University policy.

257) At the time that Defendant Reck locked Plaintiff out of his office, removed his personal items and confiscated his computer, Defendant knew that she did not have just cause to fire Plaintiff. Defendant Reck also knew that Plaintiff had not received any Due Process prior to his termination. That, in fact, it was only her dismissal letter *per se* that caused Plaintiff to be terminated from Indiana University South Bend.

258) As with all of the misconduct complained of herein, there was no legitimate non-discriminatory reason for Defendant Reck's actions.

259) As a direct and proximate result of the discrimination, retaliation, disparate treatment, breach of contract, tortious interference, defamation, and infliction of emotional distress, Plaintiff suffered great embarrassment, humiliation, mental anguish and physical harm.

260) Upon information and belief, Plaintiff claims that no white professor at Indiana University South Bend ever received or suffered from comparable maltreatment.

## M. Defendant Reck was aware that Plaintiff had previously filed a discrimination complaint

261) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

262) The article announcing Plaintiff's firing also included references to Plaintiff being sanctioned by Lynn Williams in 2008.

263) As demonstrated in the preceding paragraphs, Defendant Reck knew that Plaintiff had not been sanctioned by Indiana University South Bend and Plaintiff had complained about grade integrity on the Indiana University South Bend campus. Furthermore, Defendant Reck knew that Williams readily admitted to Plaintiff that he was a racist. (citations in the original)

264) Also as demonstrated in the preceding paragraphs, at Indiana University South Bend sanctions can only be imposed after review of a committee and by lawful procedures. *See* **Art. XII § 2 of the Constitution of the Indiana University South Bend Academic Senate (2008)** which states [in part]: *"Sanctions, which may be imposed only after review by a committee* [Indiana University South Bend Faculty Misconduct Committee].

265) Before the South Bend Tribune article appeared announcing Plaintiff's termination, Defendant Reck was aware that Plaintiff had filed an Affirmation Action complaint in Indiana University Bloomington against Lynn Williams because, among other issues, his actions and portrayal of Plaintiff in the media. Defendant Reck also was aware that Plaintiff has consistently and continuously complained to the Indiana University Administration in Bloomington regarding his concerns about racism, discrimination and retaliation that he encountered on the Indiana University South Bend campus. Indeed, Defendant Reck has never denied that Williams was not a racist.

38

266) As a result of filing the Affirmation Action complaint in 2008, Plaintiff never had to interact or report to Williams again. At that time, the articles were removed from the Indiana University Homepages.

267) The fact that this issue was ultimately resolved through Affirmative Action speaks for itself. The fact that Defendant Reck retaliated against Plaintiff because this issue was resolved through Affirmative Action attests to her motivations and state of mind.

268) Williams' actions as described herein are provided as an example of the type of discrimination and retaliation that Plaintiff has had to deal with over the years and need not be considered the dispositive act of retaliation for the purposes of this Complaint.

## N. The articles announcing Plaintiff's firing also falsely implied that Plaintiff engaged in criminal activity including violence and fraud and as such are *Defamation Per Se*

269) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

270) In Indiana, a communication constitutes *defamation per se* if it imputes criminal conduct or misconduct in a person's profession or occupation.

271) At the time of his termination Plaintiff was a tenured faculty member.

272) The articles and news reports announcing Plaintiff's termination claimed that Plaintiff violently used profanity against students and engaged in fraudulent behavior throughout his employment at Indiana University South Bend.

273) At the time that Defendant Reck conveyed Plaintiff's termination to the media, Defendant Reck knew that: (a) Plaintiff did not use profanity against students; (b) students had never filed formal complaints against Plaintiff; and (c) Plaintiff had never been found guilty of any misconduct including fraud.

## O. Defendant Reck denied Plaintiff a Dismissal Process as required by
## Indiana University South Bend

274) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

275) In addition to Plaintiff never being found guilty of misconduct, Plaintiff was also not allowed a dismissal process as required by Indiana University South Bend policy.

276) Per Indiana University policy a tenured faculty member cannot be fired for misconduct unless he or she is found guilty of misconduct in a lawful proceeding. *See* **Art. XI § 5(G)(2) of the Constitution of the Indiana University South Bend Academic Senate (2008); Art. I § 4, Organization and Governance, Trustees of Indiana University, Indiana University Academic Handbook (2011).** *See also* Art. XII **§ 2 of the Constitution of the** Indiana University **South Bend Academic Senate (2008).**

277) The dismissal process for a tenured faculty member at Indiana University South Bend is multi-layered and based on faculty peer-review. At the minimum, the tenured faculty member must be found guilty of misconduct in a lawful proceeding, and then the faculty member's case must be reviewed by the Indiana University South Bend Promotion, Tenure and Reappointment Committee which shall review the case and determine: (a) if the alleged misconduct is significant enough to warrant the faculty member's termination; and (b) if termination is warranted, should dismissal proceedings [actually] be commenced. *See* **Art. IX § 4(D) of the Constitution of the Indiana University South Bend Academic Senate** which states in pertinent part that *"Before formal dismissal proceedings are begun, the PTR Committee shall consider the case and shall determine whether in its view formal dismissal proceedings should be instituted."* [emphasis added]

278) On numerous occasions Plaintiff advised Defendant Reck that she is required by Indiana University South Bend policy to have Plaintiff's case reviewed by the Indiana University South Bend Promotion, Tenure and Reappointment Committee.

279) In no way has Defendant Reck ever contested the fact that Plaintiff was never found guilty of misconduct. Rather, Defendant Reck claims that she does not have to follow policy or procedures for the Plaintiff, whom she professes to be an "African American male" who has complained "too much" about discrimination and retaliation; and that her letter of dismissal *per se* is all that she needs for his termination.

280) Defendant Reck acted on her prejudices and assertions when she fired Plaintiff by simply writing a dismissal letter even though Plaintiff had never been found guilty of misconduct; and then circumventing the Indiana University South Bend dismissal process and grievance process by submitting Plaintiff's termination directly to The Trustees of Indiana University, who approved it, thereby eliminating Plaintiff's internal grievance remedies and right to appeal.

281) Upon information and belief, Plaintiff claims that no white professor at Indiana University South Bend ever received or suffered from comparable maltreatment.

**P. Defendant Reck eliminated Plaintiff's internal grievance remedies and right to appeal**

282) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

283) Although Plaintiff had never been found guilty of misconduct, Defendant Reck circumvented the Indiana University South Bend grievance process and submitted Plaintiff's termination directly to The Trustees of Indiana University, who approved it, thereby eliminating Plaintiff's internal grievance remedies and right to appeal.

284) Per Indiana University South Bend policy, the Indiana University South Bend Faculty Board of Review reviews faculty member's grievances against the Chancellor (i.e., Defendant Reck).

285) The Indiana University South Bend Faculty Board of Review process is voluntary on the part of the grievant and is not part of the faculty misconduct process or the dismissal process.

286) The Indiana University South Bend Faculty Board of Review is not an arbitration body and has no power or authority to reinstate a fired faculty member or remove or modify sanctions. All the Indiana University South Bend Faculty Board of Review can do is give a recommendation to the Chancellor (i.e., Defendant Reck) asking her to reconsider her actions.

287) In short, the Indiana University South Bend Faculty Board of Review does not have any authority or power to remedy the harm that Defendant Reck caused Plaintiff.

288) Given the fact that Plaintiff had denied all charges and continues to do so, and that Plaintiff had never been found guilty of misconduct, and the fact that Indiana University South Bend has extensive policies regarding tenure and termination and provides faculty members with extensive protections against such actions in addition to extensive protections for those in a protected class, it would be unreasonable for the Indiana University South Bend Faculty Board of Review to conclude that Defendant Reck did not breach law and Indiana University South Bend policies when she simply wrote a letter and terminated Plaintiff.

289) Plaintiff submitted his Grievance prior to his termination and expected to have his grievance hearing forthwith.

290) Plaintiff's Grievance was nearly three hundred (300) pages. The Grievance document was annotated, factual, comprehensive, and spoke for itself.

291) In the Grievance, among other items, Plaintiff asked for Declaratory Judgment, which manifested as simple questions as to whether Defendant Reck followed the law, policies and procedures of Indiana University South Bend. To make the grievance process more efficient, the questions Plaintiff posed in his Grievance to the Indiana University South Bend Faculty Board of Review could have been answered by yes or no responses.

292) Plaintiff was looking forward to his grievance hearing wherein he would have presented evidence and witnesses in support of his Grievance claims and would have had questions for the Indiana University South Bend Faculty Board of Review regarding its actions.

293) However, the Indiana University South Bend Faculty Board of Review is advised by the Indiana University Corporate Counsel Office, the same Counsel that also advises Defendant Reck. And as such, is an inherent conflict of interest. There is no reason why Indiana University Corporate Counsel would advise the Indiana University South Bend Faculty Board of Review to adhere to policy and find for Plaintiff after Defendant Reck had already terminated Plaintiff and scandalized Plaintiff by placing falsehoods in the media.

294) Whereas Plaintiff submitted his Grievance before he was terminated, he duly advised the Indiana University South Bend Faculty Board of Review that he was concerned that his reference to discrimination and retaliation could negatively affect the Indiana University South Bend Faculty Board of Review's actions.

295) Plaintiff's fears were realized. Although the Indiana University South Bend Faculty Board of Review claimed that Plaintiff did not receive Due Process nor had a chance to answer the charges as set forth by Defendant Reck, the Indiana University South Bend Faculty Board of Review was not transparent and the process it instituted was antagonistic, burdensome, contradictory and did not conform to the policies in the Indiana University South Bend Academic Handbook or Indiana University governing documents.

296) Notwithstanding, in email communications to Plaintiff, the Indiana University South Bend Faculty Board of Review claimed that Plaintiff did not receive Due Process nor had he a chance to defend himself against the charges before he was terminated by Defendant Reck. This is especially troublesome given the fact that Defendant Reck, as Chancellor, does not have the authority to terminate a tenured faculty member. She can only write a recommendation for

termination and said recommendation must be reviewed and accepted by Indiana University President Michael McRobbie and The Trustees of Indiana University. Moreover, said termination can come only after the tenured faculty member had a hearing and been found guilty of misconduct and dismissal proceedings were approved by the Indiana University South Bend Promotion, Tenure and Reappointment Committee.

### Q. Indiana University South Bend Faculty Board of Review asserts that Plaintiff did not receive Due Process nor had a chance to defend himself

297) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

298) While preparing for the grievance hearing it was discovered that Defendant Reck had long since circumvented the grievance process and submitted Plaintiff's termination directly to The Trustees of Indiana University which subsequently approved Plaintiff's termination.

299) There is no mechanism to internally grieve The Trustees of Indiana University dismissal decision. Consequently, a grievance hearing would no longer be operable and any recommendation made by the Indiana University South Bend Faculty Board of Review would not be dispositive or valid.

300) Even though Plaintiff had never been found guilty of misconduct, when Defendant Reck circumvented the grievance process and submitted Plaintiff's termination to The Trustees of Indiana University, among other ramifications, she effectively ended Plaintiff's right to appeal to Indiana University President Michael McRobbie and The Trustees of Indiana University. In so doing, Defendant eliminated all of Plaintiff's internal grievance remedies.

301) Needless to say, Defendant Reck never addressed Plaintiff's Grievance. Notwithstanding, based on Defendant Reck's past conduct and behavior, it was foreseeable that she would violate Indiana University South Bend policy and state statute and circumvent the grievance and appeal

processes and submit Plaintiff's termination directly to The Trustees of Indiana University, effectively ending Plaintiff's grievance process and his right to appeal even though Plaintiff was never found guilty of misconduct.

### R. Defendant Reck's Disparate Treatment against Plaintiff was severe and pervasive

302) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

303) Plaintiff was exceeding Defendant Reck's expectations. Plaintiff earned tenure in two (2) areas of excellence and was a well-qualified employee as evidenced by his teaching awards, research output, service and his constant and consistently high student evaluations.

304) Indeed, even after the Klink Report, Plaintiff received raises, praise, extra teaching assignments, travel allowance, etc. And as such, the Klink Report was not dispositive.

305) Notwithstanding, while preparing for the grievance hearing it was discovered that there was disparate treatment by Defendant Reck regarding pay raises and incentive awards which Plaintiff received during his employment at Indiana University South Bend compared to those received by others during the same time period.

306) As mentioned previously, Defendant Reck had often asserted that she believed that Plaintiff, an African American male, complained too much about discrimination and retaliation, and that she does not have to follow law or Indiana University policy to fire Plaintiff; that she can simply write a letter and terminate Plaintiff from Indiana University.

307) Defendant Reck acted on her prejudicial, discriminatory and retaliatory assertions when she circumvented the entire grievance process and appeal process and submitted Plaintiff's termination directly to The Trustees of Indiana University even though Plaintiff was never found guilty of misconduct. Accordingly, Defendant Reck's assertion that Plaintiff has less

rights because he is an African American male and that she can dismiss him, a tenured professor, by simply issuing a letter of dismissal, has come to fruition.

308) Defendant Reck has completely and totally destroyed Plaintiff's career. From placing items in the media that falsely portrayed that Plaintiff engaged in conduct that was incompatible with his profession and that Plaintiff engaged in criminal offenses, to violating Indiana University South Bend policies, to ignoring the dismissal process, to circumventing Plaintiff's grievance and appeal processes, to submitting Plaintiff's termination directly to The Trustees of Indiana University without Plaintiff ever being found guilty of misconduct, clearly demonstrates Defendant Reck recklessly, intentionally and maliciously set out to destroy Plaintiff's career and reputation.

309) Plaintiff has always denied wrongdoing and will continue to do so. Plaintiff was an award winning professor, a former police officer, an Army veteran and Plaintiff states for the record that he has never been treated with so much disdain, and has never seen such a blatant disregard for the rule of law.

310) Based upon non-confidential and non-privileged information and upon knowledge as to himself and his own acts, and otherwise upon information and belief, Plaintiff asserts that his complaining about discriminatory actions led to his discriminatory treatment and retaliation by Defendant Reck.

311) Accordingly, Defendant Reck's false and malicious portrayal of Plaintiff is discriminatory and retaliatory and also in violation of **Art. XII § 2 of the Constitution of the Indiana University South Bend Academic Senate (2008).**

312) Furthermore, the conduct of Defendant Reck is outrageous, and was performed with malice, oppression, and conscious disregard for Plaintiff's rights and feelings and/or with the intent, design and purpose of injuring Plaintiff.

313)    Upon information and belief, Plaintiff claims that no white professor at Indiana University South Bend ever received or suffered from comparable maltreatment.

## FACTS IN SUPPORT OF COMPLAINT

314)    Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

315)    At the time that the South Bend Tribune newspaper announced Plaintiff's termination from Indiana University South Bend (which has since gone viral), Defendant Reck knew that Plaintiff had not received any Due Process prior to his termination. That, in fact, it was only her dismissal letter *per se* that caused Plaintiff to be fired from Indiana University South Bend.

316)    Indiana University South Bend policies and procedures are specifically designed to facilitate substantive and procedural Due Process consistent with the rights of all faculty members.

317)    Indiana University policies and procedures also specifically highlight the issues and obstacles that African Americans encounter because of their race, color and national origin.

318)    Accordingly, Defendant Reck had an affirmative duty to acknowledge and investigate assertions, concerns and issues regarding disparate treatment, discrimination, retaliation, etc.

319)    Notwithstanding the abundance of law, policies, and procedures which prohibit such actions, Defendant Reck and/or agents acting on her behalf, discriminated and retaliated against Plaintiff on the basis of his race, color and national origin by treating Plaintiff differently from, and less preferably than, similarly-situated non-African American professors.

320)    Defendant Reck was not an Indiana University South Bend employee at the time of Plaintiff's hiring at Indiana University South Bend in 1999, and she used her position as Chancellor to intentionally misrepresent Plaintiff's alleged 1998 resume and employment application in a deliberate and successful effort to unreasonably and unjustly fire Plaintiff.

321)   Moreover, during Plaintiff's employment at Indiana University South Bend, Defendant Reck had engaged in a pattern of discrimination and retaliation, including but not limited to, interfering with the Plaintiff's work by sending the Chief of the Indiana University South Bend Police Department to Plaintiff's classroom in an effort to intimidate, humiliate, embarrass and impede the Plaintiff.

## A. Defendants engaged in a deliberate effort to Discriminate against and Fire Plaintiff

322)   Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

323)   Based upon non-confidential and non-privileged information and upon knowledge as to himself and his own acts, and otherwise upon information and belief, Plaintiff claims that he was subjected to disparate treatment, discrimination, retaliation, breach of contract, tortious interference, defamation, and infliction of emotional distress and alleges as follows:

324)   That Defendant Reck fired Plaintiff from Indiana University South Bend without Plaintiff ever being found guilty of misconduct by any lawful proceedings is discriminatory and retaliatory and is also in violation of Indiana University policy. *See* **Art. XI § 5(G)(2) of the Constitution of the Indiana University South Bend Academic Senate (2008); Art. I § 4, Organization and Governance, Trustees of Indiana University, Indiana University Academic Handbook (2011).**

325)   That Defendant Reck fired Plaintiff without first submitting his case to the Indiana University South Bend Senate Promotion, Tenure and Reappointment Committee is discriminatory and retaliatory and is also in violation of **Art. IX § 4(A) of the Constitution of the Indiana University South Bend Academic Senate (2008)** which states:

*All cases of tenure at Indiana University South Bend **without exception** [emphasis added] shall be under the jurisdiction of the Promotion, Tenure and Reappointment*

*Committee.*

*Before formal dismissal proceedings are begun (see Article X for a definition of dismissal) the Committee shall consider the case and shall determine whether in its view formal dismissal proceedings should be instituted* **[Art. IX § 4(D) of the Constitution of the Indiana University South Bend Academic Senate (2008)].**

326) That Defendant Reck fired Plaintiff without relying on the Indiana University South Bend Faculty Misconduct Committee's decision (which incidentally, ruled in Plaintiff's favor) is discriminatory and retaliatory and in violation of Indiana University policy. *See* **Art. XI § 5(G)(1) of the Constitution of the Indiana University South Bend Academic Senate (2008).**

327) That Defendant Reck fired Plaintiff without Plaintiff ever being found guilty of misconduct by any lawful proceedings, substantively and procedurally *changes the faculty discipline policy at Indiana University South Bend* because it makes her the sole arbitrator of faculty discipline, and as such is discriminatory and retaliatory and is also in violation of **Art. XI § 5(G)(1) of the Constitution of the Indiana University South Bend Academic Senate (2008); Art. 1 § 4, Organization and Governance, Trustees of Indiana University, Indiana University Academic Handbook (2011).**

328) That Defendant Reck fired Plaintiff because he exercised his First Amendment rights is discriminatory and retaliatory and is also in violation of Indiana University policy. *See* **Indiana University Policy on Academic Freedom, Indiana University Academic Handbook (2011).**

329) That Defendant Reck fired Plaintiff because he complained about student grades (i.e., grade integrity) is discriminatory and retaliatory and is also in violation of Indiana University policy. *See* **Indiana University Policy on Academic Freedom, Indiana University Academic Handbook (2011).**

330) That Defendant Reck fired Plaintiff because he made a good faith disclosure of wrong doing

is discriminatory and retaliatory and is also in violation of Indiana University policy. *See* **The Academic Appointee and the University, Indiana University Academic Handbook (2011).**

331) That Defendant Reck fired Plaintiff and published and announced through the media that Plaintiff was violent, used profanity against students and engaged in fraudulent behavior throughout his employment at Indiana University is in violation of Indiana University policy. *See* **The Academic Appointee and the University, Indiana University Academic Handbook (2011).**

332) That Defendant Reck fired Plaintiff because he participated in the "Faculty Development Process" is discriminatory and retaliatory and is also in violation of Indiana University policy. *See* **§ 3, Support for Professional Development and Research, The Academic Appointee and the Indiana University South Bend Campus, Indiana University South Bend Academic Handbook (2008);** and **Indiana University Guiding Principles for Faculty Review (1999).**

333) That Defendant Reck fired Plaintiff without Plaintiff ever being found guilty of misconduct by any lawful proceedings, substantively and procedurally *changes tenure at Indiana University South Bend* for Plaintiff because it makes her the sole arbitrator of his tenure, and as such is discriminatory and retaliatory and is also in violation of **Art. XI § 5(G)(1) of the Constitution of the Indiana University South Bend Academic Senate (2008); Art. 1 § 4, Organization and Governance, Trustees of Indiana University, Indiana University Academic Handbook (2011).**

334) That Defendant Reck ignored timelines and procedures when she fired Plaintiff is discriminatory and retaliatory and in violation of Indiana University policy. *See* **Art. IX § 4** and **§ 5(G)(6) of the Constitution of the Indiana University South Bend Academic Senate (2008); and Dismissal from the Faculty or Libraries, Indiana University Handbook (2011).**

335) That Defendant Reck's attempt to re-interpret Plaintiff's academic credentials more than ten years after those credentials had been stipulated, contracted and verified, constitutes disparate treatment and is a retroactive hiring process which is discriminatory and retaliatory and also in violation Indiana University policy. *See* **Indiana University South Bend Recruitment and Search Guide (2009); Indiana University Search & Screen Procedures (2011); and Academic Recruitment & Search Guide, Indiana University Office of the Vice Provost for Faculty and Academic Affairs (2011).**

336) That Defendant Reck hired a private investigator to question Plaintiff's previous employers and others without Plaintiff's permission or consent is discriminatory and retaliatory and in violation of Indiana University policy. *See* **Indiana University South Bend Recruitment and Search Guide (2009); Indiana University Search & Screen Procedures (2011); and Academic Recruitment & Search Guide, Indiana University Office of the Vice Provost for Faculty and Academic Affairs (2011).**

337) That Defendant Reck's claim that reference letters are mandatory for Plaintiff's hiring subjects Plaintiff to disparate treatment because it substantially and procedurally *changes the hiring process at Indiana University South Bend* "specifically for Plaintiff," and as such is discriminatory and retaliatory and also in violation of Indiana University policy. *See* **Indiana University South Bend Recruitment and Search Guide (2009); Indiana University Search & Screen Procedures (2011); and Academic Recruitment & Search Guide, Indiana University Office of the Vice Provost for Faculty and Academic Affairs (2011).**

338) That Defendant Reck's demand that Plaintiff verify the "state of mind" of those that submitted alleged reference letters on Plaintiff's behalf more than ten years ago and who are now deceased subjected Plaintiff to disparate treatment and is discriminatory and retaliatory and also is in violation of Indiana University policy. *See* **Indiana University South Bend**

51

Recruitment and Search Guide (2009); Indiana University Search & Screen Procedures (2011); and Academic Recruitment & Search Guide, Indiana University Office of the Vice Provost for Faculty and Academic Affairs (2011).

339)   That Defendant Reck's decision to deny Plaintiff access to his personnel file is discriminatory and retaliatory and is also in violation of Indiana University policy. *See* **Conditions of Work, Access to Personnel File By the Academic Employee, Indiana University Academic Handbook (2011).**

340)   That Defendant Reck's decision to ignore Plaintiff's complaints and disregard evidence is unreasonable and unconscionable and is discriminatory and retaliatory and is also in violation of Indiana University policy. *See* **Art. XII § 2 of the Constitution of the Indiana University South Bend Academic Senate (2008); Art. 2, The Academic Appointee and the University; and the Indiana University Code of Academic Ethics.**

341)   That Defendant Reck's claim that her letter of dismissal *per se* is all that is needed for her to fire Plaintiff is discriminatory and retaliatory and also a violation of Indiana University policy. *See* **Art. IX § 4 of the Constitution of the Indiana University South Bend Academic Senate (2008); Art. 1 § 4, Organization and Governance, Trustees of Indiana University, Indiana University Academic Handbook (2011).**

342)   That Defendant Reck fired Plaintiff without *discussing or evaluating* Plaintiff's work performance (i.e., fitness) is discriminatory and retaliatory and also a violation of Indiana University policy. *See* **Art. IX § 4 of the Constitution of the Indiana University South Academic Senate (2008); and Dismissal from the Faculty or Libraries, Indiana University Academic Handbook (2011).**

343)   That Defendant Reck fired Plaintiff without being specific as to the charges that Plaintiff violated is discriminatory and retaliatory and also in violation of Indiana University South Bend

policy. *See* **Art. IX § 4 and Art. XI § 5(A)(2) of the Constitution of the Indiana University South Bend Academic Senate (2008).**

344)   That Defendant Reck fired Plaintiff by professing and promoting information that is clearly false or inaccurate is discriminatory and retaliatory and also in violation of Indiana University policy. *See* **Art. 2 of the Constitution of the Indiana University Faculty, University Faculty Council; Art. § 5(A)(2) of the Constitution of the Indiana University South Bend Academic Senate; and Art. 2, The Academic Appointee and the University; and Indiana University Code of Academic Ethics.**

345)   That Defendant Reck fired Plaintiff by intentionally and deliberately misusing materials from Plaintiff's *pre-tenure* period is discriminatory and retaliatory and also in a violation of Indiana University policy. *See* **Art. IX § 4 of the Constitution of the Indiana University South Bend Academic Senate (2008); Indiana University South Bend Recruitment and Search Guide (2009); Indiana University Search & Screen Procedures (2011); and Academic Recruitment & Search Guide, Indiana University Office of the Vice Provost for Faculty and Academic Affairs (2011)]; Art. 2 of the Constitution of the Indiana University Faculty, University Faculty Council; Art. XI § 5(A)(2) of the Constitution of the Indiana University South Bend Academic Senate; and Art. 2, The Academic Appointee and the University; and Indiana University Code of Academic Ethics.**

346)   That Defendant Reck fired Plaintiff without following Indiana University policy which stipulates that Plaintiff must have a year before the dismissal takes effect is discriminatory and retaliatory and is also a violation of Indiana University policy. *See* **Art. IX § 4 of the Constitution of the Indiana University South Bend Academic Senate (2008); and Dismissal from the Faculty or Libraries, Indiana University Academic Handbook (2011).**

347) That Defendant Reck fired Plaintiff by promoting claims that grow out of, or depends upon, or is inseparably connected with her own unreasonable and illegal conduct and cannot be made in good faith, is discriminatory and retaliatory and also in violation of Indiana University policy. *See* **Art. IX § 4 of the Constitution of the Indiana University South Bend Academic Senate (2008); Art. 2, The Academic Appointee and the University; and Indiana University Code of Academic Ethics.**

348) That Defendant Reck fired Plaintiff by claiming that it is "misconduct" when Plaintiff cannot verify the alleged information submitted by others, in instances that occurred more than a decade ago is discriminatory and retaliatory and also in violation of Indiana University policy. *See* **Art. IX § 4 of the Constitution of the Indiana University South Bend Academic Senate (2008); Indiana University South Bend Recruitment and Search Guide (2009); Indiana University Search & Screen Procedures (2011); and Academic Recruitment & Search Guide, Indiana University Office of the Vice Provost for Faculty and Academic Affairs (2011).**

349) That Defendant Reck failed to be in compliance with statutes and Indiana University South Bend policies was motivated by discrimination and retaliation and constitutes disparate treatment in violation of **Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e-5), and jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a).**

350) That Defendant Reck failed to investigate Plaintiff's complaint of discrimination, retaliation, and disparate treatment was motivated by discrimination and retaliation in violation of **Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e-5), and jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a).**

351) That Defendant Reck, during the course of Plaintiff's employment, discriminated against Plaintiff, in the terms, conditions and privileges of his employment, in substantial part, in

violation of **Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e-5), and jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a).**

352) That Defendant Reck persistently and intentionally carried out actions which did not have any legitimate non-discriminatory purpose and which constituted unlawful racial discrimination, retaliation and disparate treatment in the terms, conditions and privileges of Plaintiff's employment, in violation of **Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e-5), and jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a).**

353) That Defendant Reck's discrimination against Plaintiff created an intimidating, oppressive, hostile and offensive work environment, and specifically constituted disparate treatment, in violation of **Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e-5), and jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a).**

354) That Defendant Reck's discriminatory and retaliatory misconduct interfered with and damaged Plaintiff's emotional and physical well-being.

355) Upon information and belief, Plaintiff claims that no white professor at Indiana University South Bend ever received or suffered from comparable maltreatment.

## CONCLUSION AND STATEMENT OF LEGAL CLAIM

### COUNT I

#### Race Discrimination Under § 1981

356) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

357) By the acts and practices described above, Defendants discriminated against Plaintiff in the terms and conditions of his employment on the basis of his race, color and national origin in violation of § 1981.

358) Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiff's statutorily protected rights.

359) Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to his reputation as a result of Defendants' discriminatory practices unless and until this Court grants relief.

## COUNT II

### Retaliation Against Plaintiff Under § 1981

360) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

361) By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition to unlawful discrimination under § 1981.

362) Defendants acted with malice and/or reckless indifference to Plaintiff's statutorily-protected rights.

363) As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## COUNT III

### Discrimination Violation of Indiana's Fair Employment Practice Act (IC 29-1-1 et seq.)

364) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

365) By the acts and practices described above, Defendants discriminated against Plaintiff in the terms and conditions of his employment on the basis of his race, color and national origin in violation of Indiana's Fair Employment Practice Act (IC 29-1-1 et seq.)

366) Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiff's statutorily-protected rights.

367) Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to Plaintiff's reputation as a result of Defendants' discriminatory practices unless and until this Court grants relief.

### COUNT IV

Retaliation in Violation of Indiana's Fair Employment Practice Act (IC 29-1-1 et seq.)

368) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

369) By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition to unlawful discrimination under Indiana's Fair Employment Practice Act (IC 29-1-1 et seq.)

370) Defendants knew that its actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiff's statutorily-protected rights.

371) Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to his reputation as a result of Defendants' discriminatory practices unless and until this Court grants relief.

### COUNT V

Disparate Treatment

372) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

373) By the acts and practices described above, Defendants subjected Plaintiff to disparate treatment when compared to white professors, which is in violation of Indiana Civil Rights Act and Title VII and Section 1981 of the Civil Rights Act of 1964.

374) Defendants knew that its actions constituted unlawful discrimination and/or acted with malice or reckless disregard for plaintiff's statutorily-protected rights.

375) Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to his reputation as a result of Defendants' discriminatory practices unless and until this Court grants relief.

## COUNT VI

### Tortious Interference

376) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

377) At all times relevant Plaintiff was an employee of Indiana University South Bend.

378) Defendants had a duty to adhere to Indiana University's policy of non-discrimination, non-retaliation, and to base disciplinary actions on objective facts.

379) Defendants breached that duty by wrongfully and falsely contriving events and conduct so as to impose disciplinary action on Plaintiff in contravention to Defendants' stated policies of fair and equitable treatment of its employees.

380) Defendants' tortious interference led to Plaintiff being wrongfully disciplined and ultimately being discharged from employment.

381) Plaintiff suffered damages resulting from Defendants' tortious interference.

## COUNT VII

### Promissory Estoppel

382) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

383) As stated above, Indiana University South Bend's employee handbook and governing doctrines promise its employees they will not be disciplined or otherwise retaliated against if they complain of discrimination. Plaintiff relied on that promise to register his complaints.

384) As a result of and retaliation to said Plaintiff, and in furtherance of her continuing pattern of wrongful and discriminatory behavior, Defendant Reck fired Plaintiff, a tenured faculty member: (a) without ever being found guilty of professional or personal misconduct by any lawful proceedings; (b) without a hearing; (c) without any discussion or evaluation of his work performance; (d) without being advised about how he violated Indiana University South Bend policy; (e) without having his case reviewed by the Indiana University South Bend Promotion, Tenure and Reappointment Committee; and (f) without using the Indiana University South Bend Faculty Misconduct Committee ruling (which incidentally, ruled in his favor).

385) As noted above, in violation of Indiana University South Bend policy, Defendant Reck engaged a third party in an effort to conduct a sham investigation.

386) Plaintiff again relied on and followed the policies, procedures outlined in the Indiana University South Bend Handbook, which assured him that employees would not be treated unfairly or retaliated against for bringing forth a Grievance to the Indiana University South Bend Faculty Board of Review and a charge before the EEOC.

387) Defendant Reck's response to Plaintiff's Grievance was dispositive and severe. Although Plaintiff had never been found guilty of misconduct, nor had any type of hearing, Defendant Reck circumvented the Indiana University South Bend dismissal process and grievance process and submitted Plaintiff's termination directly to The Trustees of Indiana University, who approved it, thereby eliminating Plaintiff's internal grievance remedies and right to appeal.

388) This action should be estopped since it violates Indiana University South Bend's own policies and Handbook, and contractual provisions assuring employees of equal employment

opportunities and that complaints dealing with this subject will not be punishable or result in retaliation against the employee.

389) Plaintiff detrimentally relied on these contractual assurances prior to, and all during his employment with Defendants.

## COUNT VIII

### Defamation Per Se

390) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

391) Statements by Defendant Reck impute to Plaintiff criminal conduct and/or misconduct in Plaintiff's profession or occupation.

392) At the time of his termination Plaintiff was an award winning tenured faculty member at Indiana University South Bend who consistently received some of the highest evaluations on campus.

393) The articles and news reports announcing Plaintiff's termination, as published and spoken by Defendants through the media, claimed that Plaintiff was violent, used profanity against students and engaged in fraudulent behavior throughout his employment at Indiana University South Bend.

394) At the time that Defendant Reck conveyed Plaintiff's termination to the media, Defendant Reck knew that: (a) Plaintiff did not use profanity against students; (b) students had never filed formal complaints against Plaintiff; and (c) Plaintiff had never been found guilty of any misconduct including fraud.

395) The publication and republication of the Statements proximately caused general and special damages to Plaintiff. Defendants knew, anticipated, foresaw, and intended that the Statements would be read by persons throughout the United States and the world and would damage the

reputation of the Plaintiff. The Statements have adversely affected Plaintiff's scholarly credibility, speaking, writing, and publishing opportunities, and caused psychological and emotional trauma and suffering.

## COUNT IX

### Defamation

396) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

397) At the time of his termination Plaintiff was an award winning tenured faculty member at Indiana University South Bend who consistently received some of the highest evaluations on campus.

398) The articles and news reports announcing Plaintiff's termination, as published and spoken by Defendants through the media, claimed that Plaintiff was violent, used profanity against students and engaged in fraudulent behavior throughout his employment at Indiana University South Bend.

399) The Statements by Defendants, individually and collectively, referred to herein have caused or are causing, and will cause Plaintiff to suffer injury to his professional standing, to his reputation and good name; and the Statements have held and will continue to hold Plaintiff up to public scandal and ridicule.

400) The Statements were calculated to, and do, expose Plaintiff to public scorn, hatred, and ridicule. By such published Statements, Defendants did injure the Plaintiff's reputation within his professional circles and in the community at large.

401) The publication of the Statements proximately caused general and special damages to the Plaintiff. The Statements have adversely impacted Plaintiff's scholarly credibility, and opportunities for writing, teaching, speaking and book sales. The Statements have damaged

Plaintiff's professional standing in the academic community. The Statements have proximately caused Plaintiff emotional and psychological trauma and suffering which is continuing.

## COUNT X

### Intentional or Reckless Infliction of Emotional Distress

402) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

403) As a result of Defendants' disparate treatment of, and at all times relevant, Plaintiff was an employee of Indiana University South Bend.

404) As a result Defendants' treatment of Plaintiff, including race and national origin discrimination, marginalization, unlawful retaliation, breach of contract and defamation described above, Plaintiff has suffered humiliation and severe emotional distress.

405) The above described actions by Defendants was done with malice, oppression and fraud for the sole purpose of revenge, to influence the decisions of Plaintiff's colleagues, cause permanent harm to Plaintiff's reputation and ability to secure employment and to cause Plaintiff distress and aggravation all due to Defendants' ill will and hatred towards Plaintiff. Plaintiff therefore, seeks an award of punitive damages.

406) Such extreme and outrageous acts against Plaintiff go beyond all possible bounds of decency and are to be considered utterly intolerable in a civilized community.

407) Defendants' actions were without just cause or excuse.

408) Defendants' intentional and reckless conduct was the direct cause of Plaintiff's emotional distress.

## COUNT XI

### Negligent Infliction of Emotional Distress

409)  Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

410)  Defendants had a duty to maintain a race-neutral work environment in which Plaintiff could work free of discrimination, harassment, humiliation, and hostility. Defendants, in failing to adequately consider, investigate and resolve Plaintiff's complaints of discrimination, retaliation, marginalization, breach of contract, and ultimately subjecting him to wrongful termination, is in negligent breach of this duty and is directly responsible for Plaintiff's emotional distress and the resultant injuries.

411)  Defendants' negligent conduct is the direct cause of Plaintiff's severe emotional distress. Plaintiff has suffered direct injury to his professional reputation and Defendants' negligent conduct has endangered Plaintiff's emotional well-being and livelihood.

## COUNT XII

### Violation of IC-21-39-2-4(b)

412)  Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

413)  The Trustees of Indiana University can terminate the employment of a tenured faculty member only after a *"determination of guilt by lawful proceedings."*

414)  Per Indiana University South Bend policy, the Indiana University South Bend Faculty Misconduct Committee has jurisdiction in matters alleging faculty misconduct. *See* **Art. XI § 5(A) Faculty Misconduct Policy Procedures.**

415)  In November 2009, the Indiana University South Bend Faculty Misconduct Committee found in Plaintiff's favor on all issues.

416) Defendant Reck then hired Klink, a private investigator to conduct a "background" check on Plaintiff. Yet, even with such a thorough background check, all Klink could do was merely summarize Defendant Reck's allegations. Said allegations were the same in which the Indiana University South Bend Faculty Misconduct Committee investigated and cleared Plaintiff of.

417) Furthermore, in no way has Defendant Reck ever contested the fact that Plaintiff was never found guilty of misconduct. Rather, Defendant Reck claims that she does not have to follow policy or procedures for the Plaintiff, whom she professes to be an "African American male" who has complained "too much" about discrimination and retaliation; and that her letter of dismissal *per se* is all that she needs for his termination.

418) Defendant Reck acted on her prejudices and assertions when she fired Plaintiff by simply writing a dismissal letter even though Plaintiff had never been found guilty of misconduct; and then circumventing the Indiana University South Bend dismissal process and grievance process by submitting Plaintiff's termination directly to The Trustees of Indiana University, who approved it, thereby eliminating Plaintiff's internal grievance remedies and right to appeal.

## COUNT XIII

### Actual Fraud

419) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

420) At all times relevant Plaintiff was an employee of Indiana University South Bend.

421) The Indiana University South Bend employee handbook and governing doctrines promise its employees fair and equitable treatment.

422) The Indiana University South Bend employee handbook and governing doctrines promise its employees that administrators (i.e., Defendants) will adhere to policies, codes, doctrines, etc. therein.

423) Defendants had a duty to adhere to Indiana University's policies and to base disciplinary actions on objective facts.

424) Defendants breached that duty by falsely and fraudulently contriving events and conduct so as to impose disciplinary action on Plaintiff in contravention to Defendants' stated policies of fair and equitable treatment of its employees.

425) Upon information and belief, Defendant Reck fired Plaintiff, a tenured faculty member: (a) without ever being found guilty of professional or personal misconduct by any lawful proceedings; (b) without a hearing; (c) without any discussion or evaluation of his work performance; (d) without being advised about how he violated Indiana University South Bend policy; (e) without having his case reviewed by the Indiana University South Bend Promotion, Tenure and Reappointment Committee; and (f) without using the Indiana University South Bend Faculty Misconduct Committee ruling (which incidentally, ruled in his favor).

426) Upon information and belief, Defendant Reck: (a) professed, promoted and articulated information that is clearly inaccurate and/or false; (b) used and misused materials from Complainant's pre-tenure period (i.e., probationary period); (c) used "faculty development" as a cause of action for misconduct; (d) refused to adhere to IU policy which stipulates Complainant should have a year before dismissal takes effect; and (e) falsely conveyed to the media that Complainant had been sanctioned, terminated and engaged in fraudulent behavior throughout his employment at Indiana University South Bend.

427) Although Plaintiff had never been found guilty of misconduct, Defendant Reck circumvented the Indiana University South Bend dismissal process and grievance process and submitted Plaintiff's termination directly to The Trustees of Indiana University, who approved it, thereby eliminating Plaintiff's internal grievance remedies and right to appeal.

428) Defendant Reck, as Chancellor, does not have the authority to terminate a tenured faculty member. She can only write a recommendation for termination and said recommendation must be reviewed and accepted by Indiana University President Michael McRobbie and The Trustees of Indiana University. Moreover, said termination can come only after the tenured faculty member had a hearing and been found guilty of misconduct and dismissal proceedings were approved by the Indiana University South Bend Promotion, Tenure and Reappointment Committee.

429) The articles and news reports announcing Plaintiff's termination, as published and spoken by Defendants through the media, claimed that Plaintiff was violent, used profanity against students and engaged in fraudulent behavior throughout his employment at Indiana University South Bend.

430) Defendant Reck falsely and fraudulently induced and persuaded Plaintiff to file a grievance with the Indiana University South Bend Faculty Board of Review.

431) Per Indiana University South Bend policy, the Indiana University South Bend Faculty Board of Review reviews faculty members' grievances against the Chancellor (i.e., Defendant Reck). Plaintiff, at the time such representations and statements were made, believed that the representations and statements were true and relied upon them.

432) The Indiana University South Bend Faculty Board of Review process is voluntary on the part of the grievant and is not part of the faculty misconduct process or the dismissal process.

433) Plaintiff relied on the Indiana University South Bend Faculty Board of Review and the grievance process to review his Grievance against Defendant Reck. Plaintiff was anticipating a hearing wherein he would have produced evidence and witnesses to support his claims. However, while preparing for the grievance hearing it was discovered that Defendant Reck had

long since circumvented the grievance process and submitted Plaintiff's termination directly to

The Trustees of Indiana University which subsequently approved Plaintiff's termination.

434) There is no mechanism to internally grieve The Trustees of Indiana University dismissal
decision. Consequently, a grievance hearing would no longer be operable and any
recommendation made by the Indiana University South Bend Faculty Board of Review would
not be dispositive or valid.

435) The Indiana University South Bend Faculty Board of Review was an "insufficient protocol"
because Defendants falsely and fraudulently contrived events so as to cause Plaintiff to believe
that the Indiana University South Bend Faculty Board of Review would actually offer relief or
review Plaintiff's Grievance against Defendants as mandated by the Indiana University South
Bend Handbook and governing doctrines.

436) As a result of such false and fraudulent representations and, by reason of the facts alleged,
Plaintiff was damaged.

## COUNT XIV

### Constructive Fraud

437) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as
though separately set forth herein.

438) Defendants were obligated to deal fairly with Plaintiff because a special relationship existed,
especially that of a tenured faculty member and the administration.

439) Defendants falsely and fraudulently stated and represented to Plaintiff that they would
adhere to the Indiana University South Bend employee handbook and governing doctrines.

440) Plaintiff, at the time such representations and statements were made, believed that the
representations and statements were true and relied upon them.

441) As a result of such false and fraudulent representations and, by reason of the facts alleged, Plaintiff was damaged.

## COUNT XV

### Breach of Contract

442) Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

443) At all times relevant Plaintiff was an employee of Indiana University South Bend.

444) The Indiana University South Bend employee handbook and governing doctrines outline the contractual relationship and agreement between the Defendants and the Plaintiff.

445) Plaintiff was a tenured faculty member at Indiana University South Bend, and as such, was vested with the rights and privileges therein.

446) Plaintiff has performed all of his obligations under the Agreement with Defendants.

447) Defendants failed to perform their obligations under the Agreement when Defendant Reck fired Plaintiff, a tenured faculty member: (a) without ever being found guilty of professional or personal misconduct by any lawful proceedings; (b) without a hearing; (c) without any discussion or evaluation of his work performance; (d) without being advised about how he violated Indiana University South Bend policy; (e) without having his case reviewed by the Indiana University South Bend Promotion, Tenure and Reappointment Committee; and (f) without using the Indiana University South Bend Faculty Misconduct Committee ruling (which incidentally, ruled in his favor).

448) As a result of this conduct, Plaintiff has suffered damages and harm for which Defendants are liable.

## COUNT XVI

### Breach of Contract by Defendant Reck

449)   Plaintiff re-alleges and incorporates by reference all allegations of all paragraphs above as though separately set forth herein.

450)   At all times relevant Plaintiff was an employee of Indiana University South Bend.

451)   The Indiana University South Bend employee handbook and governing doctrines outline the contractual relationship and agreement between Defendant Reck and Plaintiff.

452)   Plaintiff was a tenured faculty member at Indiana University South Bend, and as such, was vested with the rights and privileges therein.

453)   Plaintiff has performed all of his obligations under the Agreement with Defendant Reck.

454)   Upon information and belief, Defendant Reck fired Plaintiff, a tenured faculty member: (a) without ever being found guilty of professional or personal misconduct by any lawful proceedings; (b) without a hearing; (c) without any discussion or evaluation of his work performance; (d) without being advised about how he violated Indiana University South Bend policy; (e) without having his case reviewed by the Indiana University South Bend Promotion, Tenure and Reappointment Committee; and (f) without using the Indiana University South Bend Faculty Misconduct Committee ruling (which incidentally, ruled in his favor).

455)   Upon information and belief, Defendant Reck: (a) professed, promoted and articulated information that is clearly inaccurate and/or false; (b) used and misused materials from Complainant's pre-tenure period (i.e., probationary period); (c) used "faculty development" as a cause of action for misconduct; (d) refused to adhere to IU policy which stipulates Complainant should have a year before dismissal takes effect; and (e) falsely conveyed to the media that Complainant had been sanctioned, terminated and engaged in fraudulent behavior throughout his employment at Indiana University South Bend.

456) Although Plaintiff had never been found guilty of misconduct, Defendant Reck circumvented the Indiana University South Bend dismissal process and grievance process and submitted Plaintiff's termination directly to The Trustees of Indiana University, who approved it, thereby eliminating Plaintiff's internal grievance remedies and right to appeal.

457) Defendant Reck, as Chancellor, does not have the authority to terminate a tenured faculty member. She can only write a recommendation for termination and said recommendation must be reviewed and accepted by Indiana University President Michael McRobbie and The Trustees of Indiana University. Moreover, said termination can come only after the tenured faculty member had a hearing and been found guilty of misconduct and dismissal proceedings were approved by the Indiana University South Bend Promotion, Tenure and Reappointment Committee.

458) As a result of this conduct, Plaintiff has suffered damages and harm for which Defendant Reck is liable.

459) **WHEREFORE,** Plaintiff prays as follows:

    a. That the Court enter judgment against the Defendants;

    b. That the Court direct Defendants to reinstate Plaintiff;

    c. That the Court direct Defendants to place Plaintiff in the position he would have occupied but for Defendants' discriminatory and otherwise unlawful conduct including breach of contract and making Plaintiff whole for all earnings and other benefits that he would have received but for Defendants' discriminatory and retaliatory treatment, including, but not limited to, wages and other lost benefits;

    d. That the Court award Plaintiff damages in an amount equal to all of his accumulated lost wages and benefits, including back pay, front pay and benefits, punitive damages, and

compensatory damages for the financial and emotional harm caused by Defendants, including pre-judgment and post-judgment interest and any other damages permitted;

e. That the Court award Plaintiff compensatory damages for his mental anguish and humiliation;

f. That the Court award Plaintiff punitive damages for Defendants' intentional disregard of and/or reckless indifference to Plaintiff's statutory rights;

g. That the Court award Plaintiff payment of all fees, costs, expenses, inclusive of attorney's fees and expert fees;

h. That the Court direct Defendants to compensate Plaintiff for any adverse tax consequences;

i. That the Court grant other and further relief as deemed necessary and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

Andrea Ciobanu

Andrea L. Ciobanu, Atty. No 28942-49
CIOBANU LAW, PC
9000 Keystone Crossing, Suite 660
Indianapolis, IN 46240
Tel.     317.495.1090
Fax     866.841.2071
aciobanu@ciobanulaw.com
*Attorney for Otis Grant*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of the foregoing document was served on the following counsel of record and all interested parties by depositing a copy of same in the United States Mail, postage pre-paid, this 21st day of May 2013.

**William R. Cast, Chair**
Indiana University Board of Trustees
4401 Taylor Road
Fort Wayne, IN 46804

**Patrick A. Shoulders, Vice Chair**
Indiana University Board of Trustees
Ziemer Stayman Weitzel & Shoulders
20 NW First Street, 9th Floor
Evansville, IN 47706

**MaryEllen Kiley Bishop, Trustee**
Indiana University Board of Trustees
Cohen Garelick & Glazier
8888 Keystone Crossing Boulevard, Suite 800
Indianapolis, IN 46240

**Bruce Cole, Trustee**
Indiana University Board of Trustees
Indiana Memorial Union M005
900 E. 7th Street
Bloomington, IN 47405

**Philip N. Eskew Jr., Trustee**
Indiana University Board of Trustees
298 EMS W17 Lane
North Webster, IN 46555-0550

**Cora J. Griffin, Student Trustee**
Indiana University Board of Trustees
Indiana Memorial Union M005
900 E. 7th Street
Bloomington, IN 47405

**Thomas E. Reilly Jr., Trustee**
Indiana University Board of Trustees
8877 Pickwick Drive
Indianapolis, IN 46260

**Derica W. Rice, Trustee**
Indiana University Board of Trustees
Eli Lilly and Company
Lilly Corporate Center
DC 1201
Indianapolis, IN 46285

**William H. Strong, Trustee**
Indiana University Board of Trustees
Indiana Memorial Union M005
900 E. 7th Street
Bloomington, IN 47405

**Michael A. McRobbie, President**
Office of the President
Indiana University
Bryan Hall 200
107 S. Indiana Avenue
Bloomington, IN 47405

**Una Mae Reck, Chancellor**
Indiana University South Bend
Administration Building Room 250C
1700 Mishawaka Ave
South Bend, IN 46634

**Alfred J. Guillaume, Jr.**
Vice Chancellor for Academic Affairs
Indiana University South Bend
Administration Building Room 246D
1700 Mishawaka Ave
South Bend, IN 46634

**Jacqueline Simmons**
Vice President and General Counsel
Indiana University
Bryan Hall 211
107 S. Indiana Avenue
Bloomington, IN 47405

**M. Davis O'Guinn**
Associate General Counsel
Indiana University
Bryan Hall 211
107 S. Indiana Avenue
Bloomington, IN 47405

Respectfully submitted,


By: _Andrea Ciobanu_

Andrea L. Ciobanu, #28942-49
CIOBANU LAW, P.C.
9000 Keystone Crossing, Suite 660
Indianapolis, IN 46240
Telephone:    317.495.2090
Facsimile:     866.841.2071
Email:  aciobanu@ciobanulaw.com